**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Russell WOODS, Appellant.**

Superior Court of Pennsylvania.

Submitted April 10, 2006.

Filed Oct. 2, 2006.

Karl Baker, Public Defender, Philadelphia, for appellee.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, and TAMILIA, JJ.

OPINION BY STEVENS, J.:

¶ 1 On October 13, 2004, Appellant Russell Woods entered *nolo contendere* pleas to Aggravated Indecent Assault[1] and Corruption of Minors.[2] This is an appeal from the judgment of sentence entered pursuant to a negotiated plea agreement in the Court of Common Pleas of Philadelphia County on May 13, 2005, at which time Appellant received a sentence of eleven and one-half (11 ½) months to twenty-three (23) months in prison on the Corruption of Minors charge followed by a five (5) year term of reporting probation on his Aggravated Indecent Assault charge. We affirm.

¶ 2 The salient facts and procedural history in the instant matter are as follows: In her Affidavit of Probable Cause, Detective Norma Troche indicated that on June 6, 2004, Appellant, age twenty-one, approached C.G., a fifteen year old girl, as she was waiting on the platform of the South Broad Street subway. Appellant asked C.G. her name and address and tugged on her clothing. C.G. did not respond to Appellant's questioning. Appellant followed C.G. onto the train, sat next to her, and began kissing her, though she told him to stop. C.G. tried to get away from Appellant, but he followed her when she disembarked at the Tasker Street stop. Appellant proceeded to push C.G. against a wall, kiss her, thrust his hands down her pants, and digitally penetrate her vagina. Once again, C.G. tried to push Appellant away and told him to stop. Before C.G. was able to escape and flee to her nearby church on Tasker Street, Appellant slipped a piece of paper with his first name and phone number written on it into C.G.'s jacket pocket.

¶ 3 On October 13, 2004, Appellant appeared before the trial court at which time Appellant indicated he understood the difference between a trial and a plea and that no one had forced or threatened him to enter a plea. N.T., 10/13/04, at 3–4. After listening to the Commonwealth's summary of the facts surrounding the case, and satisfied that Appellant's plea was knowing, intelligent and voluntary, the trial court

1. 18 Pa.C.S.A. § 3125.

2. 18 Pa.C.S.A. § 6301.

accepted Appellant's plea of no contest to count one, aggravated indecent assault, and of no contest to count six, corruption of minors. N.T., 10/13/04, at 4–5.[3] Thereafter, the trial court ordered the Pennsylvania Sexual Offenders Assessment Board to assess whether Appellant is a sexually violent predator for purposes of Megan's Law II.[4] Dr. Barry Zakireh, Ph.D., conducted the assessment and concluded that Appellant should be classified as a sexually violent predator.

¶ 4 Also on October 13, 2004, Appellant completed a written colloquy wherein he indicated, *inter alia,* his awareness he could receive up to fifteen (15) years in jail and be fined $35,000.00 if convicted of the crimes with which he had been charged and his understanding he would, in fact, receive a sentence of 11 ½ months to 23 months in prison followed by five years probation.

¶ 5 On October 18, 2004, Appellant filed a fifty-seven page document entitled Motion to Challenge the Constitutionality of the "Sexually Violent Predator" Provisions of Pennsylvania's Megan's Law, to Suppress Evidence, and to Bar a Second Prosecution for the Same Offense.[5] Accompanying that Motion was an Amicus Curiae's Memorandum of Law in Support of a Motion to Challenge the Constitutionality of the "Sexually Violent Predator" Provisions of Pennsylvania's Megan's Law, to Suppress Evidence, and to Bar a Second Prosecution for the Same Offense.[6]

¶ 6 On May 13, 2005, the trial court conducted a hearing to determine whether Appellant should be classified as a sexually violent predator (Megan's Law Hearing). At the hearing, Appellant decided to forego his right to cross examine Dr. Zakireh and stipulated that the latter would testify in accordance with the report he prepared. N.T., 5/13/05, at 4. Appellant also asked that the notes of testimony presented in two other cases Appellant's counsel had argued before the trial court, Montinez and/or McCutchin, be incorporated into the record. N.T., 5/13/05, at 4. The trial court summarized for Appellant its understanding of counsel's continuing argument as "attempts to point out the fact that often psychology and psychiatry is (sic) still not hard science. There is some art interpretations, (sic) people's opinions go into it. It's not like a straightforward chemical analysis, okay?" N.T., 5/13/05, at 7.

¶ 7 At the conclusion of the Megan's Law Hearing, Appellant contended that the stipulated evidence was not sufficient for the Commonwealth to sustain its burden to the standard of clear and convincing evidence that Appellant should be classified as a sexually violent predator. N.T., 5/13/05, at 11. Appellant maintained that because Dr. Zakireh did not interview him personally, and relied upon Appellant's criminal behavior when he was a juvenile in making a diagnosis, his assessment is lacking.[7]

---

3. The Commonwealth's rendition of the facts was not transcribed.

4. 42 Pa.C.S. §§ 9791–9799.7.

5. Appellant also re-filed this along with a brief on February 14, 2005.

6. The trial court addressed Appellant's constitutional arguments in its September 22, 2005, Opinion.

7. We must note that this argument is disingenuous in that while counsel takes issue with the fact that Dr. Zakireh's diagnoses were not based upon a personal interview, Appellant did not engage in a personal interview with Dr. Zakireh at his counsel's direction. N.T., 5/13/05, at 11–12.

¶ 8 After reviewing the stipulated evidence and hearing the arguments of counsel, the trial court determined the evidence clearly and convincingly established that Appellant is a sexually violent predator. N.T., 5/13/05, at 15. Immediately following the hearing, the trial court sentenced Appellant pursuant to the negotiated plea agreement to a term of 11½ months to 23 months in prison for his corruption of minors conviction and followed that sentence with five years of reporting probation for his aggravated indecent assault conviction. N.T., 5/13/05, at 22.

¶ 9 On June 6, 2005, Appellant filed a timely Notice of Appeal.

¶ 10 On June 14, 2005, the trial court filed an Order Pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On June 27, 2005, Appellant filed a timely Preliminary Statement of Matters Complained of on Appeal in which he challenged the constitutionality of Megan's Law in its entirety, claimed the evidence was insufficient to establish Appellant was accurately diagnosed with a mental abnormality, and asserted that he was erroneously found to be a sexually violent predator in that the evidence was insufficient to establish clearly and convincingly he is likely to commit predatory, sexually violent offenses in the future. The final two paragraphs of his Pa.R.A.P. 1925(b) statement read as follows:

> (3.) Counsel will continue to make all efforts to obtain the necessary notes of testimony. Counsel reserves the right to file a final Statement of Matters Complained of on Appeal within fourteen days of the receipt of all the necessary notes of testimony in this case.

> (4.) Finally, counsel respectfully requests that the court postpone filing its Opinion pursuant to Pa.R.A.P. 1925 until the notes of testimony have been prepared and received, and until counsel has had a fair opportunity to review said notes and supplements this statement as necessary.

¶ 11 On September 12, 2005, without leave of court,[8] Appellant filed an untimely Supplemental Statement of Matters Complained of on Appeal which spans four pages of text in which he raises numerous, specific constitutional challenges to Pennsylvania's Megan's Law, contends the diagnoses of Dr. Zakireh are insufficient as a matter of law in that the doctor did not personally interview Appellant prior to determining Appellant was a sexually violent predator, and contends the evidence was insufficient to establish both that Appellant was a sexually violent predator and that he was likely to commit future predatory, sexually violent offenses. The final paragraph of the untimely, supplemental Pa.R.A.P. 1925(b) statement avers the following:

> (3.) Counsel reserves the right to file, should it be necessary due to further appropriate grounds for appeal becoming apparent upon review of the as yet uncompleted notes of testimony, a final Statement of Matters Complained of on Appeal within fourteen days of the receipt of all the notes of testimony in this case. Although counsel is well aware of the court's duty and desire to effectuate the efficient administration of justice, counsel is nevertheless placed in an untenable position when he is forced to choose between swift compliance with the trial court's Rule 1925(b) order and

---

**8.** We note the trial court never addressed Appellant's request contained in his Pa.R.A.P. 1925(b) statement that he be permitted to file a supplemental statement. Moreover, Appel- lant never filed a separate petition specifically seeking leave of court to file a supplemental Pa.R.A.P. 1925(b) statement.

the right of his client to raise all appropriate issues on direct appeal. This court's attention is directed to *Commonwealth v. West*, 2005 Pa.Super. 309, 883 A.2d 654 (September 9, 2005), which holds that the appropriate remedy for counsel's ineffectiveness for failure to file a Concise Statement in compliance with Rule 1925(b) is remand for the filing of a Concise Statement in accordance with that Rule.[9]

¶ 12 On September 22, 2005, the trial court filed a Pa.R.A.P. 1925(a) opinion addressing issues raised in both of Appellant's Pa.R.A.P. 1925(b) statements.

¶ 13 In the statement of questions involved portion of his brief, Appellant raises ten (10) issues for our review. Prior to addressing the merits of Appellant's challenges to Megan's Law II, we must determine whether those issues have been properly preserved for our review.

¶ 14 In *Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005), the Supreme Court reaffirmed the bright-line rule established in *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), that requires waiver whenever an appellant fails to raise an issue in a court-ordered Pa.R.A.P. 1925(b) statement. In *Castillo*, the Supreme Court determined that issues which are raised in an untimely Pa.R.A.P. 1925(b) statement will be deemed waived even if the trial court addresses the issues

in its Pa.R.A.P. 1925(a) opinion. The Supreme Court noted that this "system provides litigants with clear rules regarding what is necessary for compliance and certainty of result for failure to comply." *Castillo*, 585 Pa. at 402, 888 A.2d at 779–780. Recently, this Court extended *Castillo's* prohibition against the filing of untimely Pa.R.A.P. 1925(b) statements to the filing of untimely supplemental Pa.R.A.P. 1925(b) statements without leave of court. *Commonwealth v. Jackson*, 900 A.2d 936 (Pa.Super.2006).[10]

■ ¶ 15 Herein, Appellant filed an initial, timely Pa.R.A.P. 1925(b) statement, in which he stated he needed to review the as yet unavailable transcripts; however, he did not file a separate petition seeking an extension of time or permission to file a supplemental Pa.R.A.P. 1925(b) statement *nunc pro tunc*.

¶ 16 In violation of the clear language of *Castillo* and *Jackson, supra,* Appellant attempted to seek court approval to file an untimely supplemental 1925(b) statement by merely adding language to the closing paragraphs of his initial 1925(b) statement. This procedure is improper.

■ ¶ 17 As such, we herein hold that an appellant's mere language in an initial, timely 1925(b) statement unilaterally reserving additional time in which to file an untimely 1925(b) statement will not suffice

---

9. Appellant did not file any additional supplemental Pa.R.A.P. 1925(b) statements.

10. We recognize that *Jackson* appears to be distinguishable in that in *Jackson,* the appellant provided no reason as to why his supplemental issues could not have been raised in his timely Pa.R.A.P. 1925(b) statement while Appellant in the case *sub judice* averred he wished to file a supplemental Pa.R.A.P. 1925(b) statement upon the receipt of the notes of testimony; however, we conclude the distinction does not require a different result. As is discussed *infra,* an appellant cannot

simply include in a timely Pa.R.A.P. 1925(b) statement a "reservation of right" or other informal request to file an untimely, supplemental Pa.R.A.P. 1925(b), no matter what the reason might be for such a request. Rather, in order to file an untimely initial or supplemental Pa.R.A.P. 1925(b) statement, an appellant must file a separate petition seeking an extension of time or permission to file a Pa. R.A.P. 1925(b) statement *nunc pro tunc.* Such action will guarantee the trial court will take explicit action and will eliminate the implicit action condemned in *Castillo.*

to preserve future issues raised in any untimely statement, even when the reason for such action is the result of the unavailability of transcripts.

¶ 18 Rather, we hold that an appellant must petition the trial court within the fourteen day period he or she has to file a timely 1925(b) statement, set forth good cause for an extension of a specific amount of time in which to file the statement, and obtain an order granting the request for the extension before the issues raised in an untimely 1925(b) statement will be preserved for appeal to this Court.[11]

¶ 19 As Appellant herein did not file a separate petition seeking prior court approval before filing his untimely supplemental Pa.R.A.P. 1925(b) statement, he has waived the specific challenges to Megan's Law he set forth in that statement; however, we will proceed to a consideration of Appellant's general claim that Megan's Law II is unconstitutional, as that issue was raised in his initial, timely Pa. R.A.P. 1925(b) statement.

¶ 20 After pleading *nolo contendere* to his crimes, but prior to his sexually violent predator hearing and sentencing, Appellant presented the trial court with his constitutional challenges to Megan's Law in what amounts to a written motion for extraordinary relief. However, Rule 704 of the Pennsylvania Rules of Criminal Procedure provides in relevant part:

(B) Oral Motion for Extraordinary Relief.

    (1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an oral

motion in arrest of judgment, for a judgment of acquittal, or for a new trial.

    (2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.

    (3) *A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.*

Pa.R.Crim.P. 704(B) (emphasis added).

¶ 21 The Comment to Rule 704 provides further guidance regarding when a motion for extraordinary relief is appropriate:

[W]hen there has been an egregious error in the proceedings, the interests of justice are best served by deciding that issue before sentence is imposed. Because the relief provided by this section is extraordinary, boilerplate motions for extraordinary relief should be summarily denied.

\* \* \*

Paragraph (B)(3) is intended to make it clear that a motion for extraordinary relief is neither necessary nor sufficient to preserve an issue for appeal. The failure to make a motion for extraordinary relief, or the failure to raise a particular issue in such a motion, does not constitute a waiver of any issue. Conversely, the making of a motion for extraordinary relief does not, of itself, preserve any issue raised in the motion, nor does the judge's denial of the motion preserve any issue.

---

11. In the alternative, an appellant who has filed a timely Pa.R.A.P. 1925(b) statement, and then for good cause shown discovers that additional time is required to file a supplemental Pa.R.A.P. 1925(b) statement, may file a separate petition seeking permission to file a supplemental Pa.R.A.P. 1925(b) statement *nunc pro tunc*.

¶ 22 In a case which is procedurally similar to the one *sub judice,* this Court determined:

[t]he plain terms of Rule 704(B) does (sic) not permit the filing of a *written* motion for extraordinary relief prior to sentencing. Additionally, Rule 704(B) states that such motions only be made in exceptional circumstances. As we admonished in procedurally similar cases, 'this Rule was not intended to provide a substitute vehicle for [a] convicted defendant to raise matters which could otherwise be raised *via* post sentence motions.'

*Commonwealth v. Howe,* 842 A.2d 436, 441 (Pa.Super.2004) (citations omitted) (emphasis in original).

¶ 23 In *Howe,* the appellant entered a negotiated plea of guilty to one count of aggravated indecent assault and to one count of indecent assault which arose out of two, separate criminal complaints that were later consolidated. Prior to sentencing, the appellant filed a motion to withdraw his plea, and he subsequently withdrew that motion. A few days later, the appellant filed a written motion for extraordinary relief challenging the constitutionality of Pennsylvania's Megan's Law II and requesting other relief. Thereafter, the trial court denied the motion for extraordinary relief and then sentenced the appellant to the terms of the negotiated plea agreement and found him to be a sexually violent predator. The appellant then filed a motion for reconsideration which the trial court denied, and a timely appeal followed. *Howe,* 842 A.2d at 440.

¶ 24 After admonishing the appellant for filing a written motion for extraordinary relief and noting that the proper course would have been for the appellant to challenge Megan's Law II by raising his challenges to it in a post-sentence motion pursuant to Pa.R.Crim.P. 720, this

Court noted the "[a]ppellant preserved his constitutional challenge *via* his timely post-sentence motion." *Howe,* 842 A.2d at 441. We also noted that constitutional issues, including sentencing issues based upon the constitution, are waived if they are not properly raised in the trial court. *Howe,* 842 A.2d at 441 (*citing Commonwealth v. Grekis,* 411 Pa.Super. 513, 601 A.2d 1284 (1992)).

¶ 25 Herein, Appellant did not file a timely post-sentence motion, yet he argues his constitutional challenges have been preserved and relies upon the fact that:

[a]t the Megan's Law hearing in the instant case, notes of testimony detailing oral argument made in other cases before [the trial court], which presented the same constitutional challenges made in the instant case, were incorporated by reference and made part of the record in the instant case (N.T.[,] 5/13/05, 4–5). Those other cases are *Commonwealth v. Brian McCutchen,* CP 04–02–0959, hearing held January 14, 2005 and *Commonwealth v. Joel Montanez,* CP 04–04–0307, hearing held April 8, 2005.

Reply Brief for Appellant at 2.

¶ 26 Upon our review of the transcript of those proceedings, we note that in the Joel Montanez matter, counsel's argument concerned the reasons why the trial court should not find the defendant to be a sexually violent predator and the notes of testimony reveal no general challenge to the constitutionality of Megan's Law II. In addition, in the McCutchen matter, counsel primarily argued the pre-sentence investigator's personal interview of the defendant violated his Sixth and Fifth Amendment rights. N.T., 1/14/05, at 10, 14–15. Counsel also asked that testimony from a prior proceeding in which the constitutionality of the current version of Megan's Law was litigated be incorporated therein, though the specific case cite is not

provided. N.T., 1/14/05, at 17. Once again, the argument as to the constitutionality of Megan's Law II was not provided in the McCutchen matter; therefore, in light of *Howe, supra,* we find that Appellant has failed to preserve any general challenge to the constitutionality of Megan's Law II for our review.

¶ 27 In Appellant's second and third issues, he alleges insufficient evidence existed to establish he suffered from a mental abnormality or that he was likely to commit future, predatory sexually violent offenses. Appellant claims the evidence presented at his Megan's Law Hearing was insufficient to establish he was accurately diagnosed with a mental abnormality and insufficient to establish by clear and convincing evidence that he was likely to commit predatory, sexually violent offenses in the future; thus, Appellant posits the trial court erred in finding him to be a sexually violent predator. Specifically, Appellant contends Dr. Zakireh's failure to interview Appellant personally prior to diagnosing his condition, and the doctor's reliance upon Appellant's behavior when he was a juvenile, call into question the accuracy of his assessment. Also, Appellant claims the likelihood of recidivism is an inexact science and is especially unpredictable when the future behavior is predicated on one's behavior as a juvenile. Brief for Appellant at 60–62.[12]

A challenge to the sufficiency of the evidence is a question of law subject to plenary review. We must determine whether the evidence admitted at [the SVP hearing] and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all elements of the [statute]. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court. **At a hearing prior to sentencing the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator.** In reviewing the sufficiency of the evidence regarding the determination of SVP status, we will reverse the trial court only if the Commonwealth has not presented clear and convincing evidence sufficient to establish each element required by the statute. "The clear and convincing standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue.'"

*Commonwealth v. Evans,* 901 A.2d 528, 534 (Pa.Super.2006) (citations omitted; bracketed information in original; emphasis added).

¶ 28 A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense as set forth in § 9795.1 and who is determined to be a sexually violent predator under § 9795.4 due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9792. A mental abnormality is "[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person

---

12. As this Court recently held, Pa.R.Crim.P. 606 sets forth the manner in which a challenge to the sufficiency of the evidence supporting a sexually violent predator determination must be made. *Commonwealth v. Askew,* 907 A.2d 624 (Pa.Super.2006). In that case, pursuant to Pa.R.Crim.P. 606, Appellant orally challenged the sufficiency of the evidence during the Megan's Law II hearing, and he specifically raised his second and third issues in his initial, timely Pa.R.A.P. 1925(b) statement. Therefore, the issues concerning the sufficiency of the evidence are properly before us. *Askew, supra;* Pa.R.Crim.P. 606.

in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Id.* Predatory behavior is defined by statute as "[a]n act directed ... at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

¶ 29 The statute specifically details the process by which an individual is determined to be a Sexually Violent Predator. Section 9795.4(b) of Pennsylvania's Megan's Law states in pertinent part:

(b) Assessment—Upon receipt from the court of an order for an assessment, a member of the board as designated by the administrative officer of the board shall conduct an assessment of the individual to determine if the individual should be classified as a sexually violent predator. An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment filed as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b).[13]

■ ¶ 30 We agree with the trial court's finding that Dr. Zakireh had ample information available to him from which to make an informed diagnosis of Appellant's condition, in that he reviewed over thirty (30) documents pertaining to Appellant including mental health assessments, treatment records and criminal history records.[14] Dr. Zakireh stated in his report that "[t]he absence of an interview does not preclude the ability to evaluate the offender's behavior throughout available history for characteristics similar or dissimilar to the criteria set forth in the law for defining a sexually violent predator." Report of Barry Zakireh, Ph.D., 1/7/05, at 3. Dr. Zakireh further explained that "[i]t

---

**13.** Dr. Zakireh's report includes a discussion of each of these enumerated areas.

**14.** It is noteworthy that Appellant does not challenge the accuracy of these documents in his brief.

also does not preclude the ability to apply the criteria for determining sexual re-offense risk based on empirically guided clinical or actuarial procedures." *Id.*

¶ 31 We also find no merit to Appellant's suggestion that the evidence was insufficient to support the trial court's finding that he is a sexually violent predator due to Dr. Zakireh's reliance upon Appellant's juvenile history in predicting his future behavior. Appellant was twenty-one years of age when he committed the instant offense and the records Dr. Zakireh consulted span his commitment history which stretched from the time he was age twelve (12) until he was age nineteen (19). Report of Barry Zakireh, Ph.D., 1/7/05, at 4–5. Appellant was first sent to a mental health facility after he masturbated before his seventh grade class, ejaculated on a doorknob, and physically assaulted the teacher who attempted to intervene. Report of Barry Zakireh, Ph.D., 1/7/05, at 5. At age seventeen (17), Appellant attempted to rape his eighteen (18) year old cousin and stabbed her in the arm when she tried to escape. Report of Barry Zakireh, Ph.D., 1/7/05, at 5.

¶ 32 Throughout his teenage years, Appellant was almost continuously committed to mental health and juvenile detention facilities. Report of Barry Zakireh, Ph.D., 1/7/05, at 5. The records of his behavior from these various institutions document repeated instances of Appellant's inappropriate sexual and physical outbursts and include references to times when he smeared his feces on the walls, urinated in public and was physically aggressive toward staff. Report of Barry Zakireh, Ph.D., 1/7/05, at 5–6. In addition, Appellant did not benefit from sex offender treatment. Report of Barry Zakireh, Ph.D., 1/7/05, at 5.

¶ 33 Specifically, Dr. Zakireh noted the following when determining Appellant is a sexually violent predator:

The records from at least four residential treatment centers in which he was placed between 1995 and 2001 indicate that he continued to act in an assaultive or aggressive manner on numerous occasions. These included episodes of sexually inappropriate or assaultive behavior such as multiple episodes of genital exposure; masturbation in public; excessive or inappropriate masturbation; frottage involving female staff members; difficulty controlling sexual urges toward female staff; soliciting sexual encounters with consenting or nonconsenting peers; obsessive preoccupation with sex or sexual offending including rape fantasies; inappropriate touching of the genitals or body of peers or staff members in structured settings; urinating in public; and repeated sexual comments or offensive, instigating behaviors. Some of these behaviors reportedly continued until at least two months prior to his discharge from the last treatment center (Cresson Secure Treatment Facility).

Report of Barry Zakireh, Ph.D., 1/7/05, at 5–6.

¶ 34 At the Megan's Law Hearing, the trial court indicated on the record that "[b]ased on a review of all the available information, I find that in this case [Appellant] does meet the criteria of a sexually violent predator." N.T., 5/13/05, at 15. In its Opinion the trial court indicated that in determining Appellant is a sexually violent predator, it made the following findings of fact:

[Appellant] pled guilty to AIA and CMON (sic). There was one victim. While [Appellant] did not exceed the means necessary to achieve the offense and was not excessively violent, he did

restrain the victim. His behavior was deliberate and involved risk taking. His victim was a stranger under 21 years of age. There was no evidence that the victim was physically or mentally handicapped.

[Appellant's] prior criminal history, which includes sexual and non-sexual offenses, indicates that has a higher risk for recidivism. At the time of the instant offense, he was 22 years old,[15] the age level associated with a higher risk of recidivism. He has a history of mental health disorders including ADHD, conduct disorders, impulse control problems, mental retardation and Paraphilia. He claims to have been sexually abused by his biological mother. His sexual offense history includes instances of predatory sexually assaultive behavior.

Trial Court Opinion, 9/22/05, at 7–8.

¶ 35 Applying our standard of review, we find the record reveals that the Commonwealth has presented clear and convincing evidence sufficient to establish Appellant is a sexually violent predator.

¶ 36 Judgment of sentence is affirmed.

15. Appellant was twenty-one (21) years of age at the time of the offense and would turn twenty-two (22) years old later that year.