J-S06013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL G. HALL | |
| Appellant | No. 1793 EDA 2016 |

Appeal from the Order May 12, 2016
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0002103-2014

BEFORE:  MOULTON, J., RANSOM, J., and FITZGERALD, J.*

MEMORANDUM BY MOULTON, J.:                          **FILED JULY 14, 2017**

Michael G. Hall appeals from the May 12, 2016 order entered in the Northampton County Court of Common Pleas classifying him as a sexually violent predator ("SVP") under the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.41.  We affirm.

The trial court set forth the facts of this case as follows:

> [O]n October 14, 2013, the victim reported the sexual abuse to police. . . . [T]he victim disclosed to her stepmother that she had been sexually assaulted by [Hall] from the time she was ten (10) years old, commenting that "'I haven't been a virgin since fourth grade.'"  When interviewed about the sexual assault, the victim reported to . . . living with her biological father . . . Michael Hall, since she was two (2) years old, and the abuse started at the age of ten.  Initially, [Hall] would just touch the victim under her bra, which later progressed to "touching her vagina and genitals and digitally penetrating her vagina."

---

* Former Justice specially assigned to the Superior Court.

Over the next year, [Hall] began "penetrating her with a dildo and a vibrator that her mother kept in a drawer by the bed" and showing her adult pornography. [Hall] began to penetrate the victim's vagina with his penis, and "he never used a condom and would withdraw and ejaculate into a towel he had on the bed." Additionally, [Hall] "orally assaulted her, licking her ["]vagina and boobs with his tongue." Further, the victim reported that "[Hall] made her suck his penis and forced her to swallow the ejaculate . . . he would masturbate in front of her and have her masturbate his penis to ejaculation . . . [Hall] would make her use the vibrator in front of him and would masturbate watching her." [Hall] also gave the victim marijuana to try once.

According to the victim, the assaults happened "'almost every time they were alone.'" [Hall] was "described as 'nasty' to her, saying she was worthless, and one time smacking her in the face." He would tell her, "'if anything happened, you will go to foster care' . . . [h]e added that he would 'get her out of trouble if she needed as long as she went along' with the abuse." The victim disclosed the sexual abuse "because she couldn't take it anymore." Detectives interviewed two of the victim's ex-boyfriends, who both stated that the victim disclosed to them about being sexual[ly] abused by [Hall].

At the Preliminary Hearing, the victim testified that the abuse started "'barely at first, but then increased to a lot' … that by her age of 11, the assaults were occurring once or twice a week up to 2 or 3 times a week until it ended." Additionally, the victim testified that she "'told him I didn't want to do it anymore,' which would cause [Hall] to become mean and ask for it, then she 'just went along with it so he would treat her nicer.'"

Pennsylvania Rule of Appellate Procedure 1925(a) Statement, 8/5/16, at 3-5

("1925(a) Op.") (internal citations omitted; some alterations in original).

On June 11, 2015, Hall entered a plea of *nolo contendere* to corruption

of minors, 18 Pa.C.S. § 6301(a)(1)(ii). On that same date, the trial court

sentenced Hall to 1½ to 3 years' incarceration, followed by 4 years' probation, consistent with the plea agreement. Based on his corruption of minors conviction, Hall was classified as a Tier I offender under SORNA, which required him to register as a sex offender for 15 years. The trial court further ordered that an SVP assessment be performed.

The trial court held an SVP hearing on November 25, 2015. At the hearing, Veronique N. Valliere, Psy.D., a clinical psychologist and member of the Sexual Offenders Assessment Board ("SOAB"), testified regarding her assessment of Hall. The trial court thoroughly summarized the substance of Dr. Valliere's testimony in its opinion filed with the May 12, 2016 order classifying Hall as an SVP, which we adopt and incorporate herein. *See* Trial Ct. Op., 5/12/16, at 2-5. On June 6, 2016, Hall timely appealed to this Court.

Hall raises the following issues on appeal:

1. Did the trial court err in concluding that the Commonwealth met its burden of proof concerning Michael Hall's qualification as an SVP where the Commonwealth's expert opinion evidence was inadmissible under the applicable standard?

2. Did the trial court err in finding that the weight of the evidence established by "clear and convincing" evidence that Michael Hall should be classified as an SVP?

Hall's Br. at 4 (suggested answers omitted).[1]

_____

[1] In its Rule 1925(a) opinion, the trial court found that Hall's Rule 1925(b) statement was vague and suggested that his claims should be deemed waived on that basis. 1925(a) Op. at 1-2. Hall raised the same two
*(Footnote Continued Next Page)*

A challenge to a trial court's SVP determination is a challenge to the sufficiency of the evidence, for which our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Meals***, 912 A.2d 213, 218 (Pa. 2006). When reviewing a trial court's SVP determination, we must view the evidence in the light most favorable to the Commonwealth and may not re-weigh the evidence or substitute our judgment for that of the trial court. ***Commonwealth v. Prendes***, 97 A.3d 337, 355 (Pa.Super. 2014). The question for the trial court is whether the Commonwealth's evidence establishes that the defendant has a mental abnormality or personality disorder that makes him or her likely to engage in predatory sexually violent offenses. ***Commonwealth v. Brooks***, 7 A.3d 852, 863 (Pa.Super. 2010); ***see*** 42 Pa.C.S. § 9799.12. We will reverse an SVP determination only if the Commonwealth did not present "clear and convincing evidence that each element of the statute has been satisfied." ***Commonwealth v. Baker***, 24 A.3d 1006, 1033 (Pa.Super. 2011), *aff'd*, 78 A.3d 1044 (Pa. 2013).

On appeal, Hall asserts that the Commonwealth failed to prove by clear and convincing evidence that he has a mental abnormality or

_____

*(Footnote Continued)* ─────────────

issues in his Rule 1925(b) statement that he raises in the statement of questions involved in his appellate brief, and the trial court addressed each of Hall's arguments in its opinions. Therefore, because our review of Hall's issues is not hampered, we decline to find waiver.

personality disorder that makes him likely to re-offend. *See* Hall's Br. at 13, 16.[2] We disagree.

First, Hall challenges the fact that Dr. Valliere did not interview him prior to reaching her conclusions. As the trial court observed, however, Hall "was given the opportunity to submit to an interview with the evaluator and refused to do so. He cannot now claim that the evaluation is somehow defective or objectionable because [Hall] refused to be interviewed." 1925(a) Op. at 3; *see Prendes*, 97 A.3d at 359 ("[T]he absence of an interview does not preclude the ability to evaluate the offender's behavior through available history for characteristics similar or dissimilar to the criteria set forth in the law for defining [an SVP].") (quoting *Commonwealth v. Woods*, 909 A.2d 372, 381 (Pa.Super. 2006)).

Second, Hall asserts that Dr. Valliere improperly considered the "unproven" allegations of sexual abuse included in his criminal record with regard to the instant offense, including the affidavit of probable cause and the police report, because Hall only pled *nolo contendere* to corruption of minors. Contrary to Hall's assertion, however, Dr. Valliere was permitted to

---

[2] Hall also appears to contest the admissibility of Dr. Valliere's expert report and testimony. *See* Hall's Br. at 4, 21. At the hearing, Hall's counsel initially objected to Dr. Valliere's written report, N.T., 11/25/15, at 11, but later withdrew the objection, *id.* at 28. Hall also did not raise any objection to Dr. Valliere's testimony. Therefore, Hall has waived any purported challenge to the admission of Dr. Valliere's report and testimony. *See Baker*, 24 A.3d at 1034.

rely on Hall's entire criminal file in forming her opinion. ***See Prendes***, 97 A.3d at 360 ("[SORNA] does not limit the expert's consideration of information only to that admitted at trial or at the guilty plea proceedings.")

Moreover, despite several continuance requests, Hall failed to present any evidence to rebut or impeach Dr. Valliere's testimony. ***See id.*** at 358 ("Once expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel[]," who "bears the burden of exposing and exploring "'any weaknesses in the underpinnings of the expert's opinion.'") (quoting ***In re D.Y.***, 34 A.3d 177, 183 (Pa.Super. 2011)).

Based on our *de novo* review of the certified record, the parties' briefs, and the relevant law, and viewing the evidence in the light most favorable to the Commonwealth, we conclude that the trial court correctly determined that Hall is an SVP under SORNA. We reach this conclusion for the reasons stated in the trial court's May 12, 2016 opinion, which we adopt and incorporate herein. ***See*** Trial Ct. Op., 5/12/16, at 1-12.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2017

TC0
S06013-17

## IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA ) NO. 2103-2014
)
v. )
)
MICHAEL HALL, )
)
Defendant. )

<div style="float:right">CLERK OF COMMON PLEAS CRIMINAL DIVISION NORTHAMPTON COUNTY, PA 2016 MAY 12 PM 2:44 FILED</div>

### ORDER OF COURT

AND NOW, this 12th day of May, 2016, after reviewing the briefs of counsel with regard to Defendant's, Michael Hall, status as a Sexually Violent Predator, it is hereby **ORDERED** that this Defendant shall be **CLASSIFIED** as a Sexually Violent Predator.

### STATEMENT OF REASONS

#### Factual and Procedural History

Michael Hall ("Defendant"), was initially charged with Rape of a Child, Rape by Forcible Compulsion (2 counts), Statutory Sexual Assault, Involuntary Deviate Sexual Intercourse, Sexual Assault, Aggravated Indecent Assault (3 counts), Indecent Assault (2 counts), Incest, Endangering the Welfare of a Child, and Corruption of Minors – Sex Related.

On June 11, 2015, Defendant entered a *nolo contendere* plea to Corruption of Minors – Sex Related, 18 Pa.C.S.A. § 6301(a)(1)(ii), which was part of a Plea Agreement with a Sentence Bargain of eighteen (18) to thirty-six (36) months in State Prison, followed by a four (4) year period of state probation, and a fifteen (15) year registration under the Sex Offender Registration and Notification Act ("SORNA"). After accepting the plea and imposing the sentence bargain, we directed that a Sexually Violent Predator ("SVP") assessment be completed.

Veronique N. Valliere, Psy.D. ("Dr. Valliere"), a member of the Sexual Offenders Assessment Board ("SOAB"), completed Defendant's SVP assessment. A hearing regarding Defendant's SVP classification was held before the undersigned on November 25, 2015. Dr. Valliere's SVP Assessment ("Assessment") was entered into evidence as Commonwealth Exhibit 1. The Assessment was conducted on June 16, 2015, without interviewing Defendant, as Defendant was not made available to the SOAB. Dr. Valliere testified that the Defendant's unavailability was not significant as his unavailability "limits the diagnosis of some disorders that an interview can help, but regarding the diagnosis that I provided, in this case, it's based on a pattern of behavior that can be document[ed] in records." See Dr. Valliere's Testimony Transcript, 11/25/15, p. 7.

Dr. Valliere testified that she reviewed various records and offense information from the current charge, including: (1) Affidavit of Probable Cause, (2) Child Protective Service Investigation Report dated 10/9/13, (3) Colonial Regional Police Department Incident Report, (4) Criminal Action No. CP-48-CR-2103-2014, (5) Defendant Information, (6) Investigation Report by the Pennsylvania SOAB Investigator, (7) Letter from attorney outlining Defendant's participation dated 6/19/15, (8) Medical/Treatment Records of Victim from Lehigh Valley Health Network, (9) Northampton County Court Order dated 6/11/15 ordering the Assessment, (10) Police Criminal Complaint, (11) Records from the Child Advocacy Center, (12) Records from Northampton County Children and Youth Services, (13) Report of Suspected Child Abuse to Law Enforcement Official dated 10/9/13, and (14) Transcript of the Preliminary Hearing dated 7/14/14. See Dr. Valliere's SVP Assessment, p. 1; see also Dr. Valliere's Testimony Transcript, 11/25/15, p. 7.

2

042a

Dr. Valliere's evaluation addressed the two prongs required for the SVP assessment: (1) "whether or not [Defendant] has a mental abnormality and/or personality disorder that serves as the impetus to sexual violence, lasts a lifetime, overrode his controls and is related to a likelihood of re-offense," and (2) "whether or not [Defendant] engaged in predatory sexual behavior defined by the statute as an act against a stranger or a relationship established, initiated, maintained or promoted to facilitate victimization." See Dr. Valliere's Testimony Transcript, 11/25/15, p. 6. After a review of all relevant documents, Dr. Valliere recommended that Defendant be classified as a SVP. Id. at 11.

The factual record supporting Dr. Valiere's opinion included that, on October 14, 2013, the victim reported the sexual abuse to police. Dr. Valliere's SVP Assessment, p. 2. Apparently, the victim disclosed to her stepmother that she had been sexually assaulted by Defendant from the time she was ten (10) years old, commenting that "'I haven't been a virgin since fourth grade.'" Id. When interviewed about the sexual assault, the victim reported to be living with her biological father, the Defendant, since she was two (2) years old, and the abuse started at the age of ten. Initially, Defendant would just touch the victim under her bra, which later progressed to "touching her vagina and genitals and digitally penetrating her vagina." Id.

Over the next year, Defendant began "penetrating her with a dildo and a vibrator that her mother kept in a drawer by the bed" and showing her adult pornography. Id. Defendant began to penetrate the victim's vagina with his penis, and "he never used a condom and would withdraw and ejaculate into a towel he had on the bed." Id. Additionally, Defendant "orally assaulted her, licking her 'vagina and boobs with his tongue.'" Id. Further, the victim reported that "Defendant made her suck his penis and forced her to swallow the ejaculate ... he would masturbate in front of her and have her masturbate his penis to ejaculation ... Defendant would

3

make her use the vibrator in front of him and would masturbate watching her." Id. Defendant also gave the victim marijuana to try once. Id.

According to the victim, the assaults happened "'almost every time they were alone.'" Id. The Defendant was "described as 'nasty' to her, saying she was worthless, and one time smacking her in the face." Id. He would tell her, "'if anything happened, you will go to foster care' ... [h]e added that he would 'get her out of trouble if she needed as long as she went along' with the abuse." Id. The victim disclosed the sexual abuse "because 'she couldn't take it anymore." Detectives interviewed two of the victim's ex-boyfriends, who both stated that the victim disclosed to them about being sexual abused by the Defendant. Id.

At the Preliminary Hearing, the victim testified that the abuse started "'barely at first, but then increased to a lot' ... that by her age of 11, the assaults were occurring once or twice a week up to 2 or 3 times a week until it ended." Id. Additionally, the victim testified that she "'told him I didn't want to do it anymore,' which would cause Defendant to become mean and ask for it, then she 'just went along with it so he would treat her nicer.'" Id.

The victim's records indicated that she had been receiving mental health treatment for ADHD. Her most recent diagnoses were Oppositional Defiant Disorder and Bipolar Disorder, and an additional diagnosis of Posttraumatic Stress Disorder has been added. The three aforementioned disorders were diagnosed after her disclosure of the sexual assault. The victim was "psychiatrically admitted to the hospital for anger and cutting, as well as explosive episodes when she was 15 years old ... [s]he cited the pending trial as one of the stressors contributing to her instability." Id.

4

When interviewed by detectives, Defendant stated that he was having marital problems and "'his daughter is making every effort to split him and his wife up." Id. Further, Defendant "indicated that [victim's] disclosure was triggered by her belief that he was going to take her phone away." Id. at 3. Defendant denied having penetrated the victim or touching her inappropriately in any way, but he did state that "he 'may have touched her breasts when they would wrestle.'" Id. Additionally, he told the detectives that he believed the victim was sneaking out to meet boys, his wife caught the victim stealing her sex toys, and he smelled marijuana on her once. Id. Once, Defendant's wife confronted him about a search for teen porn on his computer, which he believed was done by the victim. Id. Defendant described the victim as "'manipulative' and claimed that she would 'come after him physically when he would punish her.'" Id. Finally, Defendant stated that the victim had been dressing in a "sexually provocative manner 'since she was at least 10 years of age.'" Id.

Following a review of all available information and in consideration of all factors specified under Pennsylvania's Adam Walsh Act, codified at 42 Pa.C.S.A. § 9799.24(d) ("Act"), Dr. Valliere determined, within a reasonable degree of professional certainty, that Defendant meets the criteria to be classified as a SVP.

At the conclusion of Dr. Valliere's testimony, the Commonwealth rested. Defendant requested to continue this matter so that he could retain his own expert witness to address the Commonwealth's presentation.

We set a hearing date for January 4, 2016, to give the Defendant a chance to obtain an evaluation and expert report. However, Defendant was unable to do so and requested another continuance, which was granted by the undersigned and later scheduled for a hearing on March 16, 2016. Finally, on March 16, 2016, Defendant abandoned his pursuit and declined to present

5

045a

any additional evidence or testimony. On that date, we granted Defendant's request to submit a brief to close the record in this matter. Defendant filed his brief on April 5, 2016. The Commonwealth filed their Brief in Response to Defendant's Brief Regarding SVP Classification on April 12, 2016. This matter is now ripe for our review.

## Discussion

In Pennsylvania, "the determination of a defendant's SVP status may only be made following an assessment by the [SOAB] and hearing before the trial court." Comm. v. Morgan, 16 A.3d 1165, 1168 (Pa. Super. 2011). The trial court should find that a defendant shall be classified as a SVP if the Commonwealth has presented clear and convincing evidence that each element of the Act is satisfied. See id. The "clear and convincing evidence" standard of proof "has been described as an 'intermediate' test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt." Id. Further, "the clear and convincing standard requires evidence that is 'so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts [in] issue." Id. (quoting Comm. v. Fuentes, 991 A.2d 935, 941-42 (Pa. Super. 2010) (citations omitted)).

An SVP is defined as a person who, "due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. Further, "after a conviction but before sentencing, a court shall order an individual convicted of a sexually violent offense to be assessed by the [SOAB]." 42 Pa.C.S.A. § 9799.24(a). The SOAB assessment shall include the following statutorily-mandated factors:

(1) Facts of the current offense, including:
    i.    Whether the offense involved multiple victims.
    ii.   Whether the individual exceeded the means necessary to achieve the offense.

6

046a

  iii. The nature of the sexual contact with the victim.
  iv. Relationship to the individual victim.
  v. Age of the victim.
  vi. Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
  vii. The mental capacity of the victim.
(2) Prior offense history, including:
  i. The individual's prior criminal record.
  ii. Whether the individual completed any prior sentences.
  iii. Whether the individual participated in available programs for sexual offenders.
(3) Characteristics of the individual, including:
  i. Age of the individual.
  ii. Use of illegal drugs by the individual.
  iii. Any mental illness, mental disability or mental abnormality.
  iv. Behavioral characteristics that contribute to the individual's conduct.
(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of re-offense

42 Pa.C.S.A. § 9799.24(b).

Moreover, the Superior Court has opined that:

[t]he precise line of inquiry for the [SOAB]'s expert, as well as any other expert who testifies at an SVP hearing, is whether the defendant satisfied the definition of sexually violent predator set out in the statute, that is, whether he or she suffers from a mental abnormality or personality disorder that makes him or her more likely to engage in predatory sexually violent offenses. The salient inquiry to be made by the trial court is the identification of the impetus behind the commission of the crime and extent to which the offender will likely reoffend.

In this context, a "mental abnormality" is a "congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." Moreover, "predatory" conduct, which is indispensable to the designation, is defined as an "act directed at a stranger or at a person with whom a relationship has been initiated, maintained or promoted, in whole or in part, in order to facilitate or support victimization."

Morgan, 16 A.3d at 1169 (quoting Fuentes, 991 A.2d at 943 (internal citations omitted)).

7

047a

Dr. Valliere, the only witness to testify at the SVP hearing, opined that the Defendant met the first prong of the SVP Assessment because he has a mental abnormality identified as "Other Specified Paraphilic Disorder to children." Dr. Valliere's Testimony Transcript, 11/25/15, p. 9. Specifically, Dr. Valliere stated that it was a "deviant sexual arousal pattern to children, which [she] determined was the motivator or impetus for his crimes against his daughter." Id. Additionally, Dr. Valliere testified that:

> the criteria for the diagnosis ... is the presence of thoughts, behaviors, fantasies or urges — sexual urges towards children in his case ... that persists for greater than six months. The allegations indicate that the sexual abuse of the child went on from age ten to [fourteen], clearly lasting six months.
>
> The disorder must result also in victimization of another and/or serious disruption in the offender's live, which, obviously, has resulted in the victimization and a disruption in [Defendant's] life.

Id. at 9-10. With regard to whether she found Defendant to have engaged in any predatory behavior, Dr. Valliere testified that:

> When [Defendant] chose to sexually assault his child and have her keep it secret, engaged in other behaviors to ensure that she would not disclose, he promoted that parent relationship. He created a separate relationship to facilitate abuse, which was secretive and exploitive. So it meets the statutory definition of predatory behavior.

Id. Further, in discussing her conclusion that the Defendant has a likelihood to re-offend, Dr. Valliere testified that:

> [Defendant's] paraphilic disorder is related to a likelihood of re-offending. SO this disorder is a lifetime disorder that cannot be cured, only managed and, obviously, overrode his controls. Clearly, he knew that the sexual assault of his child was wrong, and he did it anyway, repeatedly, and so once this disorder exists, in an individual, it's related to a likelihood of re-offense.

Id. at 10-11.

8

Dr. Valliere determined to a reasonable degree of professional certainty, taking all factors into consideration, that Defendant meets the statutory criteria for classification as a SVP. Id. at 11. Specifically, Dr. Valliere stated that "[Defendant] does have a mental abnormality, as defined by the statute, that served for the impetus of his offending and related to the likelihood of re-offense, thereby meeting the criteria for classification." Id.

Defendant's argument against Dr. Valliere's opinion is limited to complaints that (1) she did not interview the Defendant; and (2) she used facts from the original charges, most of which had been withdrawn. In his brief, Defendant argues "the factual basis for the eventual conclusion is comprised of a multitude of facts ... which there has been no admission or conviction."

We note, however, that there are no facts contradicting or impeaching Dr. Valliere's testimony and opinion. Further, Defendant waived the right to participate in the fact gathering process as he did not submit to the SOAB interview. Finally, the Defendant presented no evidence at the SVP Hearing. Thus, his complaint is limited only to the credibility and/or weight of Dr. Valliere's testimony. We can find no basis rejecting Dr. Valliere's testimony. Dr. Valliere's opinion is supported by the record and thus, we find it persuasive.

We also note that this very issue (or complaint) has been addressed by the Pennsylvania Superior Court in Commonwealth v. Prendes, 97 A.3d 337 (Pa. Super. 2014). In Prendes, the Honorable Michael J. Koury's (Northampton County Court of Common Pleas) permitted Dr. Valliere to testify at the defendant's SVP hearing about the facts of the underlying offenses as determined by her investigation, which were beyond those contained in the guilty plea transcript. The Superior Court opined and held that:

> The statute governing the SVP assessment *does not limit the expert's consideration of information only to that admitted at trial or at the guilty plea*

9

049a

*proceedings.* In fact, the statute requires state, county, and local agencies, offices or entities to provide copies of records and information as requested by the SOAB in connection with an SVP assessment, without limitation on the "admissibility" of that information. See 42 Pa.C.S.A. § 9799.24(c). As a result, it stands to reason that some if not many of the facts necessary to perform the SVP assessment might not have been proven beyond a reasonable doubt. Thus, we hold an SOAB expert opinion falls within the general rules regarding expert witnesses. As such, a SOAB expert's opinion may be based on facts or data that the expert has been made aware of or personally observed so long as experts in the particular field reasonably rely on those kinds of facts or data in forming an opinion on the subject; the facts or data consulted need not be admissible for the expert's opinion to be admitted.

. . .

Dr. Valliere was permitted to rely on documents other than just the guilty plea transcript to form her opinion on Appellant's status as an SVP. See Pa.R.E. 703. Although these documents were prepared by other persons, Dr. Valliere attested she had reviewed and relied on numerous written records as part of her assessment, including the arrest warrant, affidavit of probable cause, police reports, charge sheet, statements by the victim, etc. and confirmed that these records are ones typically relied on in SOAB evaluations. See also Pa.R.E. 703, 705. Therefore, we hold Appellant's challenge to his SVP status as based on inadmissible hearsay merits no relief.

Finally, with regard to Appellant's claim that Dr. Valliere's assessment was based on "unproven allegations" contained in documents such as the affidavit of probable cause, etc., Appellant fails to state with specificity which "unproven" facts led to his challenge to the expert report as inadmissible. Appellant's general hearsay objection to the assessment was insufficient to call into question the integrity of Dr. Valliere's report. See generally Carter, supra at 610 (Concurring Opinion). Thus, the trial court properly considered Dr. Valliere's expert report when determining if Appellant met the criteria for SVP classification.

Comm. v. Prendes, 97 A.3d 337, 360-62 (Pa. Super. 2014), appeal denied, 105 A.3d 736 (Pa. 2014) (emphasis added) (internal citations omitted).

Here, Dr. Valliere relied upon all the facts uncovered by her investigation about the sexual contact between defendant and his 10 year old daughter. Defendant has not pointed to any specific facts that were part of the alleged "multitude of facts" that Dr. Valliere should not have used in the Assessment. We are left with the inference that Defendant believes that his generous plea resolution should shield him during the SOAB assessment, such that the SOAB

10

may not consider the enormity and depravity of his sexual assaults against his 10 year old daughter. As best we can tell, the Defendant is entitled to no such protection.

We find that Defendant's argument that the Commonwealth has provided insufficient evidence to classify Defendant as a SVP is without merit, as the facts and records that Dr. Valliere relied on to make her conclusion were proper under the Superior Court's holding in Prendes.

Additionally, Defendant attacks Dr. Valliere's assessment of the second prong of the analysis, the risk or likelihood of reoffending, by stating that it was based on the "incorrectly and exaggerated statement of the facts of this offense, and the existence of the mental abnormality itself." We already discussed the Pennsylvania case law that allows Dr. Valliere to review all relevant material, even if the facts are not admitted or proven beyond a reasonable doubt, in making her SVP conclusion and we will not address this argument as it will be duplicative.

However, it should be noted that, in Fuentes, the Superior Court rejected the defendant's argument that the likelihood to reoffend must be analyzed with an "any actuarial instrument to predict risk." Fuentes, 991 A.2d at 944. Further, the risk to reoffend "is not an 'independent element' of the SVP determination, but rather, is one factor to be considered when making such an assessment." Morgan, 16 A.3d at 1173.

The attack on Dr. Valliere is limited only to argument that the factual record does not support her conclusions. However, we have found that the argument advanced by the Defendant is without merit. We find Dr. Valliere's testimony to be credible and her conclusions supported by the evidentiary record. Thus, while the Commonwealth bears the burden of proof, by clear and convincing evidence, that the Defendant is a sexually violent predator, it is not an impossible burden where the Commonwealth has presented evidentiary support to meet its burden of proof.

11

For this reason, we find that the Commonwealth has met its burden by presenting clear and convincing evidence that the Defendant should be classified as a SVP.

BY THE COURT:

STEPHEN G. BARATTA, P.J.

12

052a