COMMONWEALTH of Pennsylvania,
Appellee,

v.

Norman HOWE, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 6, 2003.

Filed Jan. 26, 2004.

Jeanne Trivellini, Reading, for appellant.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for Com., appellee.

BEFORE: DEL SOLE, P.J., FORD ELLIOTT and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 These appeals stem from the judgments of sentence entered on June 6, 2002, following Appellant Norman Howe's pleas of guilty to aggravated indecent assault (18 Pa.C.S.A. § 3125(7)) at Criminal Action No. 1339/01 and to indecent assault (18 Pa.C.S.A. § 3126(a)(6)) at Criminal Action No. 1796/01 in the Court of Common Pleas, Berks County. Appellant asserts various challenges to the constitutionality of 42 Pa.C.S.A. §§ 9791–9799.7 ("Megan's Law II" or "the Act"),[1] which were applied to his sentences.

¶ 2 At Criminal Action No. 1339/01, the Commonwealth charged Appellant with two counts of rape, two counts of involuntary deviate sexual intercourse, two counts of aggravated indecent assault, two counts of indecent assault, two counts of indecent exposure, two counts of endangering the welfare of children, and two counts of corruption of minors. These charges stemmed from events on several different occasions over the course of eleven years in which Appellant engaged in sexual contact with a juvenile female. The sexual contact began as removing the juvenile's clothes and fondling her vagina with his hands and progressed to digital penetration of her vagina. The Commonwealth filed the criminal complaint for the charges at No. 1339/01 on February 14, 2001, and filed the bill of information March 28, 2001.

¶ 3 At Criminal Action No. 1796/01, the Commonwealth charged Appellant with simple assault, aggravated indecent assault, indecent assault, endangering the welfare of children, and corruption of minors. These charges stem from events between August 1, 1992 and June 1, 1995,

---

1. Megan's Law was amended by Act of May 10, 2000, P.L. 74, No. 18, § 3. Our Supreme Court deemed substantial portions of Megan's Law enacted by the General Assembly in 1995 unconstitutional. *See Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999). In response, the Legislature passed Megan's Law II. Although the legislative policy remained the same, Megan's Law II shifted the burden of proving beyond clear and convincing that the defendant was a sexually violent predator from the defendant (which violated the defendant's due process rights) to the Commonwealth. *See* 42 Pa.C.S.A. § 9795.4(e)(3).

in which Appellant engaged in sexual contact with a juvenile male. The contact included fondling of the juvenile's penis and testicles. The Commonwealth filed the criminal complaint for the charges at No. 1796/01 on February 8, 2001, and filed the bill of information on April 27, 2001.

¶ 4 On March 29, 2001, the Commonwealth filed a motion to consolidate the two criminal actions. The trial court granted the motion.

¶ 5 On August 17, 2001, Appellant entered a negotiated plea of guilty to one count of aggravated indecent assault at No. 1339/01 and to one count of indecent assault at No. 1796/01. The plea agreement called for imprisonment of two and one-half to ten years at No. 1339/01 and for consecutive probation of five years at No. 1796/01. Prior to sentencing, on December 21, 2001, Appellant filed a motion to withdraw the guilty pleas and a motion for a mental health evaluation. The trial court granted the motion for a mental health evaluation and scheduled a hearing on the motion to withdraw the guilty pleas. On March 18, 2002, Appellant withdrew the motion to withdraw the guilty pleas. On March 21, 2002, Appellant filed a written motion for extraordinary relief challenging the constitutionality of Pennsylvania's Megan's Law II and requesting other relief. On June 6, 2002, the trial court denied the motion for extraordinary relief. The court then sentenced Appellant to the terms of the negotiated plea agreement. Additionally, the trial court found Appellant to be a sexually violent predator and subjected Appellant to the provisions of Megan's Law II. On June 11, 2002, Appellant filed a motion for reconsideration, which the trial court denied. On June 21, 2002, Appellant timely appealed. On July 19, 2002, this Court granted Appellant's motion to consolidate these two cases on appeal.

¶ 6 Appellant presents the following question for our review:

> Did not the trial court err in denying Appellant's motion for extraordinary relief, challenging the constitutionality of 42 Pa.C.S.A. § 9791, et seq., Pennsylvania's Megan's Law?

Appellant's brief, at 4.

¶ 7 Prior to addressing Appellant's challenge to Megan's Law II, we write to note our displeasure with Appellant's written motion for extraordinary relief. The proper course for Appellant to challenge Megan's Law II would have been to raise his challenges in a post-sentence motion pursuant to Pa.R.Crim.P. 720. His attempt to have the trial court review a challenge to Megan's Law II *via* a motion for extraordinary relief was misplaced and clearly disallowed by the Rules of Criminal Procedure.

¶ 8 Rule 704 of the Pennsylvania Rules of Criminal Procedure provides as follows:

> (B) Oral Motion for Extraordinary Relief.
>
> > (1) Under extraordinary circumstances, when the interests of justice require, the trial judge may, before sentencing, hear an *oral* motion in arrest of judgment, for a judgment of acquittal, or for a new trial.
> >
> > (2) The judge shall decide a motion for extraordinary relief before imposing sentence, and shall not delay the sentencing proceeding in order to decide it.
> >
> > (3) A motion for extraordinary relief shall have no effect on the preservation or waiver of issues for post-sentence consideration or appeal.

Pa.R.Crim.P. 704(B) (emphasis added). The Comment to Rule 704 provides further guidance on when a motion for extraordinary relief is appropriate:

Under paragraph (B), when there has been an error in the proceedings that would clearly result in the judge's granting relief post-sentence, the judge should grant a motion for extraordinary relief before sentencing occurs. Although trial errors may be serious and the issues addressing those errors meritorious, this rule is intended to allow the trial judge the opportunity to address only those errors so manifest that immediate relief is essential. It would be appropriate for counsel to move for extraordinary relief, for example, when there has been a change in case law, or, in a multiple count case, when the judge would probably grant a motion in arrest of judgment on some of the counts post-sentence. Although these examples are not all-inclusive, they illustrate the basic purpose of the rule: when there has been an egregious error in the proceedings, the interests of justice are best served by deciding that issue before sentence is imposed. Because the relief provided by this section is extraordinary, boilerplate motions for extraordinary relief should be summarily denied.

\* \* \*

Paragraph (B)(3) is intended to make it clear that a motion for extraordinary relief is neither necessary nor sufficient to preserve an issue for appeal. The failure to make a motion for extraordinary relief, or the failure to raise a particular issue in such a motion, does not constitute a waiver of any issue. Conversely, *the making of a motion for extraordinary relief does not, of itself, preserve any issue raised in the motion, nor does the judge's denial of the motion preserve any issue.*

*Id.* Comment (emphasis added).

¶ 9 The plain terms of Rule 704(B) does not permit the filing of a *written* motion for extraordinary relief prior to sentencing. Additionally, Rule 704(B) states that such motions only be made in exceptional circumstances. As we admonished in procedurally similar cases, "this Rule was not intended to provide a substitute vehicle for convicted defendant to raise matters which could otherwise be raised *via* post sentence motions." *Commonwealth v. Celestin,* 825 A.2d 670, 674 (Pa.Super.2003); *Commonwealth v. Fisher,* 764 A.2d 82, 85 (Pa.Super.2000), appeal denied, 566 Pa. 658, 782 A.2d 542 (2001). However, Appellant filed a motion for reconsideration of the trial court's denial of his motion for extraordinary relief. Appellant filed this motion after his sentence. Accordingly, Appellant preserved his constitutional challenge *via* this timely post-sentence motion. *See Commonwealth v. Grekis,* 411 Pa.Super. 513, 601 A.2d 1284 (1992) (Constitutional issues, even sentencing issues based upon the constitution, are waived if not properly raised in the trial court.); *Commonwealth v. McConnell,* 470 Pa. 312, 368 A.2d 646 (1977) (Claims that a life sentence was unconstitutional on equal protection and due process grounds were waived.).

¶ 10 When an appellant challenges the constitutionality of a statute, the appellant presents this Court with a question of law. *See Commonwealth v. Atwell,* 785 A.2d 123, 125 (Pa.Super.2001) (citation omitted). Our consideration of questions of law is plenary. *See id.,* 785 A.2d at 125 (citation omitted). A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution. *See Commonwealth v. Etheredge,* 794 A.2d 391, 396 (Pa.Super.2002) (citations omitted). Thus, the party challenging the constitutionality of a statute has a heavy burden of persuasion. *See id.,* 794 A.2d at 396 (citation omitted).

¶ 11 Appellant asserts that the trial court erred in failing to declare Megan's Law II unconstitutional. Appellant argues that Megan's Law II violated the Due Process Clauses of the United States Constitution and the Pennsylvania Constitution by subjecting a defendant to a separate trial without a jury that was governed by a standard of proof less than "beyond a reasonable doubt," *i.e.*, clear and convincing proof, whose end result could be certain enhancements in the sentence, specifically, counseling program for life, registration and reporting to the Pennsylvania State Police for life, and public notification, with the penalty for violation of these enhancements resulting in life imprisonment. *See* Appellant's brief, at 9–10. Appellant argues that the terms "sexual violent predator," "personality disorder," "mental abnormality," and "likely to engage in" are vague, undefined, and unknowable. *See id.* at 10–11. Appellant also argues that Megan's Law II violated his constitutional right against self-incrimination by requiring a defendant to give evidence against himself before the assessment board, by requiring agencies to provide records to the assessment board in violation of doctor-patient confidentiality, by requiring a defendant to involuntarily release mental health records to the assessment board, by requiring a defendant to provide attorney work-product, namely defense-prepared psychiatric reports, to the assessment board in violation of the attorney-client privilege, and by requiring an indigent defendant to provide reports of court-appointed experts to the assessment board. *See id.* at 11–13. Appellant also argues that Megan's Law II violated his right to a trial initiated by an indictment. *See id.* at 13. He also argues that it violated his protection against double jeopardy and that it subjected a defendant to cruel and unusual punishment because it punished a "sexually violent predator" based upon a mental condition. *See id.* at 14–15. He also argues that Megan's Law II violated substantive due process rights by subjecting a defendant to an enhanced punishment based upon a present determination that a personality disorder imposes a threat of future dangerousness. *See id.* at 15. Appellant argues that Megan's Law II's public notification violated a defendant's right to privacy. *See id.* at 15–16. Appellant also argues that Megan's Law II violated the separation of powers because the assessment board is a executive branch entity performing a judicial function and violated Article 3, Section 3 of the Pennsylvania Constitution because the Act as passed contained more than one subject. *See id.* at 16.

¶ 12 We will first examine Appellant's constitutional challenge to Megan's Law II on Due Process grounds.

¶ 13 Appellant first asserts that the registration, notification, counseling, and reporting requirements of Megan's Law II are unconstitutional because he was subjected to a separate trial without a jury in which the standard of proof for the Commonwealth was less than "beyond a reasonable doubt." This issue was addressed by our Supreme Court in *Commonwealth v. Williams*, 574 Pa. 487, 832 A.2d 962 (2003).

¶ 14 The central issue in *Williams* was whether the registration, notification, and counseling provisions of Megan's Law II, applicable to persons deemed sexually violent predators, constitute criminal punishment. Applying the United States Supreme Court's traditional two-pronged test,[2] our Supreme Court held that the

2. In the United States Supreme Court's two-pronged test, the Court first inquiries whether

Act's registration, notification, and counseling requirements do not constitute punishment. *See Williams,* at ——, 832 A.2d at 984. Accordingly, we rely on our Supreme Court's holding in *Williams* and reject Appellant's arguments that the registration, notification, and counseling requirements of Megan's Law II are punitive in nature.

■ ¶ 15 In addition, our Supreme Court in *Williams* invalidated the prescribed penalties for failure to register and to verify one's residence as unconstitutionally punitive. *See Williams,* at ——, 832 A.2d at 986. However, our Supreme Court severed these penalty provisions, *i.e.,* § 9795.2(d)(2) and § 9796(e)(2), from the remainder of Megan's Law II. Accordingly, those provisions of Megan's Law II are invalidated, but since those provisions are severable, Appellant's judgments of sentence remain.[3]

¶ 16 Appellant asserts that the definition of sexually violent predator, and its constituent terms "personality disorder," "mental abnormality," and "likely to engage in," as defined in Megan's Law II are impermissibly vague, in part undefined, and essentially unknowable thus violating Appellant's Due Process rights and rendering the Act unconstitutional.

■ ¶ 17 With these alleged defects in mind, we turn to the constitutional vagueness standard:

> The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties ... [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. Due process is satisfied if the statute provides reasonable standards by which a person may gauge his future conduct.

*Commonwealth v. Mayfield,* 574 Pa. 460, 832 A.2d 418, 422 (2003) (citations and quotation marks omitted).

¶ 18 Section 9792, 42 Pa.C.S.A. defines sexually violent predator as follows:

> "Sexually violent predator." A person who has been convicted of a sexually violent offense as set forth in section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under section 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses. The term includes an individual determined to be a sexually violent predator where the determination occurred in another state, territory, Federal Court, the District of Columbia or by court martial.

the legislature's intent was to impose punishment, and if not, whether the statutory scheme is nonetheless so punitive either in purpose or effect as to negate the legislature's non-punitive intent. *See Allen v. Illinois,* 478 U.S. 364, 368–69, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986).

3. Additionally, the severed provisions were not yet applicable to Appellant because the severed provisions dealt with penalties for failure to register and verify one's address, which were not applicable to Appellant because he was not accused of failing to register or verify his address.

Section 9792, 42 Pa.C.S.A. defines mental abnormality as follows:

"Mental abnormality." A congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.

The terms "personality disorder" and "likely to engage in" are undefined by Megan's Law II.

¶ 19 It is well established that vagueness challenges to statutes that do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand. *See Mayfield*, at ——, 832 A.2d at 422 (citations omitted).

¶ 20 Applied to Appellant's conduct, the definition of sexually violent predator, and its constituent terms, could not be clearer. Only individuals convicted of certain enumerated offenses are subject to an assessment to determine if the person should be classified as a sexually violent predator due to the individual's mental abnormality or personality disorder that creates a likelihood that the individual would engage in such sexual offenses in the future. To avoid arbitrary or capricious enforcement of Megan's Law II, a thorough assessment is conducted. The term "mental abnormality" is specifically defined and not vague in that the definition classifies which conditions are ascribed to "mental abnormality." In addition, the undefined terms "personality disorder" and "likely to engage in" are not vague on their face in that they are sufficiently definite that ordinary people can understand what conduct they prohibit and are not so vague that men of common intelligence must necessarily guess at their meaning and differ as to their application.

¶ 21 In *Commonwealth v. Rhoads*, 2003 PA Super 419, 836 A.2d 159 (2003), this Court found that the Act's definition of "sexually violent predator" was sufficiently clear and specific to withstand the constitutional challenge as to vagueness. In rejecting the appellant's argument, this Court noted the strong presumption of constitutionality enjoyed by all validly enacted legislation. *See id.*, 2003 PA Super 419, ¶ 8, 836 A.2d 159 (*citing Commonwealth v. Means*, 565 Pa. 309, 773 A.2d 143 (2001)). This Court continued:

We first note that only individuals convicted of an offense enumerated under 42 Pa.C.S.A. § 9795.1, **Registration**, of the Act are subject to an assessment devised to determine if such individual should be classified as a [sexually violent predator]. *See* 42 Pa.C.S.A. § 9795.4, **Assessments**; *see also* 42 Pa.C.S.A. § 9795.1. To further avoid arbitrary or capricious enforcement of the law, a thorough assessment of such individual is conducted pursuant to 42 Pa.C.S.A. § 9795.4(b), **Assessment**[n7] before that individual is adjudicated as a "sexually violent predator". Given the definitive filtering mechanism offered by § 9795.1 in terms of clearly defining who is subject to a [sexually violent predator] assessment and the exhaustive determinative factors utilized in making such an assessment in accordance with § 9795.4, we find the statute is sufficiently clear and specific to withstand appellant's constitutional challenge.

n7 Section 9795.4(b) of Pennsylvania's Megan's Law states in pertinent part:

**(b) Assessment.**—Upon receipt from the court of an order for an assessment An assessment shall include, but not be limited to, an examination of the following:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age of the individual.

(ii) Use of illegal drugs by the individual.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment filed as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9795.4(b).

*Id.*, 2003 PA Super 419, ¶ 9, 836 A.2d 159.

¶ 22 Accordingly, we find that the terms "sexually violent predator," "personality disorder," "mental abnormality," and "likely to engage in" are not impermissibly vague.[4]

 ¶ 23 Appellant next argues that the assessment in Megan's Law II violates his constitutional right against self-incrimination in that it required him to undergo an evaluation before the State Sexual Offenders Assessment Board (the Board). The purpose of this evaluation is not criminal and not punitive in nature but is to determine whether the convicted sex offender is a "sexually violent predator." Since the assessment does not constitute criminal punishment, *see Williams*, at ——, 832 A.2d at 984, Appellant fails to demonstrate that he was in danger of incriminating himself of a crime during his evaluation by the Board. Accordingly, Appellant's claims regarding self-incrimination fail.

 ¶ 24 Next, Appellant argues that Megan's Law II is unconstitutional because the assessment violated his right to have a trial initiated by indictment. This argument is without merit. Appellant's argument is premised on the erroneous belief that an assessment pursuant to 42 Pa.C.S.A. § 9795.4 is tantamount to a separate criminal proceeding where those affected by the Act are subject to additional punishment. However, as previously noted, our Supreme Court in *Williams* found that the requirements of Megan's Law II were *not* punitive in nature. Accordingly, the court did not violate Appellant's right

---

4. The Act's definition of "sexually violent predator" is substantially the same as that contained in Kansas' version of Megan's Law (Kan.Stat. § 59–29(a)(02)), which the United States Supreme Court determined to be sufficiently precise to be utilized as a prerequisite for civil commitment. *See Kansas v. Hendricks*, 521 U.S. 346, 360, n. 3, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

to have a "trial" initiated by indictment when he was assessed pursuant to § 9795.4 because the assessment is not a "trial."

¶ 25 Similarly, Appellant's claim that the assessment violated his right against double jeopardy must fail. In *Commonwealth v. Davis,* 708 A.2d 116, 120 (Pa.Super.1997), we determined that a Megan's Law hearing does not constitute a second trial as a "post-trial hearing is no more a 'second trial' than a sentencing hearing or a hearing on post-trial motions." Accordingly, Appellant's double jeopardy argument is without merit.

¶ 26 Appellant next argues that Megan's Law II subjected him to cruel and unusual punishment because it punished a sexually violent predator based upon a mental condition and a threat of future dangerousness. He also argues that Megan's Law II violates substantive due process by subjecting his to enhanced punishment based upon a present determination that a mental disorder poses a threat of future dangerousness.

¶ 27 Once again, Appellant errs in equating the registration, notification, and counseling requirements of the Act as punishment. The Act does not subject an individual to a harsher sentence because of his mental condition. Accordingly, Appellant's claim fails.

¶ 28 Appellant argues his privacy rights are violated through the registration and notification requirements of Megan's Law II. In *Commonwealth v. Kopicz,* 2003 PA Super 499, ¶ 21, 840 A.2d 342 (2003), we found no reason to invalidate Megan's Law II on privacy rights grounds because the defendant was still incarcerated and not yet subject to the registration and notification requirements of Megan's Law II. Additionally, a strong presumption of constitutionality exists. In *Commonwealth v.*

*Mountain,* 711 A.2d 473 (Pa.Super.1998), we held that the defendant's interest in avoiding Megan's Law disclosures is outweighed by the Commonwealth's interest in protecting the public from sexual predators. *See id.,* 711 A.2d at 478. Though Megan's Law has been amended since our pronouncement in *Mountain,* the information subject to disclosure is substantially the same under the Megan's Law II.

¶ 29 Under Megan's Law II, as was the same prior to amendment, Appellant is required to provide Pennsylvania State Police with his current address for his lifetime following his release from incarceration, parole, or probation. The offender's name, fingerprints, photograph, offense history and identifying factors are included in the information provided to Pennsylvania State Police. Pennsylvania State Police then forward the address information only to the local law enforcement in the municipality in which the appellant resides. *See* 42 Pa.C.S. § 9799.1, Duties of Pennsylvania State Police; 42 Pa.C.S. § 9795.2, Registration procedures and applicability. Every ninety days, Appellant must verify his residence and compliance with the counseling with the Pennsylvania State Police. *See* 42 Pa.C.S.A. § 9796(a), Quarterly verification. Once a year, Appellant must simply verify his address with Pennsylvania State Police. *See* 42 Pa.C.S. § 9796(b), Annual verification. Appellant's interest in avoiding disclosure of this information is clearly outweighed by the Commonwealth's compelling interest in public safety. The Commonwealth has a vital interest in protecting its citizens from harm. *See, e.g., Commonwealth v. Blouse,* 531 Pa. 167, 611 A.2d 1177, 1179 (1992) (regulation of motorists to ensure highway safety). Moreover, "persons found to have committed [the offenses set forth at § 9795.1] have a reduced expectation of privacy because of the public's in-

terest in public safety and the effective operation of government." *See* 42 Pa.C.S. § 9791(a)(5), Legislative findings and declaration of policy. Balancing the unobtrusive registration provision of Megan's Law with the Commonwealth's compelling interest in public safety, we find the momentary inconvenience of disclosing the above-described information to police is greatly outweighed by the need to ensure public safety. *See Williams*, at ——, 832 A.2d at 980; *Mountain*, 711 A.2d at 478. Thus, we find no reason to invalidate Megan's Law II on this basis. *See Kopicz*, 2003 PA Super 499, ¶ 21, 840 A.2d 342. Accordingly, Appellant's claim fails.

¶ 30 Appellant argues that Megan's Law II violates Article V, Section 1 of the Pennsylvania Constitution by granting adjudicative powers to the Board, which is an agency appointed by the executive branch.

¶ 31 Section 9795.4, Assessments, governs the assessment process. After conviction of an offense as enumerated in § 9795.1 but prior to sentencing, the court shall order an individual to be assessed by the Board. *See* 42 Pa.C.S.A. § 9795.4(a). The Board shall designate a member to conduct the assessment of the individual to determine if the individual should be classified as a sexually violent predator. *See* 42 Pa.C.S.A. § 9795.4(b). The Board shall submit a written report to the District Attorney's office. *See* 42 Pa.C.S.A. § 9795.4(d). The court then conducts a hearing to determine whether the individual is a sexually violent predator. *See* 42 Pa.C.S.A. § 9795.4(e)(1). The Commonwealth and the individual shall be given the opportunity to be heard, the right to call witnesses, the right to call expert witnesses, and the right to cross-examine witnesses. *See* 42 Pa.C.S.A. § 9795.4(e)(2). The individual shall have the right to counsel. *See* 42 Pa.C.S.A. § 9795.4(e)(2). The court then makes the final determination,

*i.e.*, whether, after hearing all of the evidence, the Commonwealth has proven by clear and convincing evidence that the individual is a sexually violent predator. *See* 42 Pa.C.S.A. § 9795.4(e)(3). Accordingly, we find that the separation of powers doctrine remains intact because the Board dictates no specific conclusion to the judiciary. *See Kopicz*, 2003 PA Super 499, ¶ 23, 840 A.2d 342 (Megan's Law II does not violate separation of powers because Board does not perform adjudicative function); *Rhoads*, 2003 PA Super 419, ¶ 10, 836 A.2d 159 (Megan's Law II constitutes substantive law and does not set forth rules governing court practice). Thus, Appellant's claim fails.

¶ 32 Lastly, Appellant argues that the Legislature violated Article 3, § 3 of the Pennsylvania State Constitution by enacting a bill containing more than one subject. *See* Const. Art. 3, § 3, Form of bills. Contrary to Appellant's assertion, Megan's Law II, and the preceding Megan's Law, addresses only one subject matter or, at worst, several subjects that are germane to one general subject, *i.e.*, the registration of sexual offenders. *See* 42 Pa.C.S.A. §§ 9791–9799.7. Accordingly, we find Appellant's final claim without merit. *See Rhoads*, 2003 PA Super 419, ¶ 11, 836 A.2d 159.

¶ 33 In conclusion, the prescribed penalty provisions in §§ 9795.2(d)(2) and 9796(e)(2), found to be unconstitutional in *Williams*, are severable, and the remainder of Megan's Law II is valid. Thus, we affirm Appellant's judgments of sentence.

¶ 34 Judgments of sentence affirmed.