J-S05018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT |
| :--- | :--- |
| Appellee | OF PENNSYLVANIA |
| | |
| v. | |
| | |
| RONALD LEROY KUYKENDALL | |
| | |
| Appellant | No. 1084 MDA 2021 |

Appeal from the Judgment of Sentence March 12, 2021
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0007430-2019

BEFORE:  PANELLA, P.J., STABILE, J., and DUBOW, J.

MEMORANDUM BY STABILE, J.:                **FILED:  MARCH 22, 2022**

Appellant, Ronald Leroy Kuykendall, appeals from his judgment of sentence and designation as a sexually violent predator ("SVP").  Appellant argues that his designation as an SVP is against the weight of the evidence. We affirm.

Appellant was arrested and charged with several sexual offenses stemming from events that occurred between January 1, 2015 and December 31, 2018.  On June 22, 2020, Appellant entered a negotiated guilty plea to Count 1, rape of a child under 18 Pa.C.S.A. § 3121(c), graded as a first-degree felony.  The court ordered an assessment the Sexual Offender Assessment Board ("SOAB").  On March 12, 2021, the court conducted a hearing and took testimony from two expert witnesses concerning whether to classify Appellant status as an SVP.  Dr. Robert Stein, a member of the SOAB, testified for the

Commonwealth, and Dr. Christopher Lorah testified for Appellant.[1] At the conclusion of the hearing, the court found Appellant to be an SVP. During the same hearing, the court sentenced Appellant in accordance with the negotiated agreement to 10-20 years of imprisonment followed by 3 years of probation.

On March 31, 2021, Appellant filed a motion for leave to file a post-sentence motion *nunc pro tunc*. On April 8, 2021, the court granted Appellant leave to file this motion. On April 14, 2021, Appellant filed his motion, and on July 14, 2021, the trial court denied his motion. On August 13, 2021, Appellant filed a timely appeal to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925. The trial court's opinion incorporated by reference its July 14, 2021 memorandum denying Appellant's post-sentence motion.

Appellant raises a single issue in this appeal: "Was the weight of the evidence against [Appellant's] designation as [an SVP] where the defense expert persuasively explained why [Appellant] is not [an SVP] and convincingly refuted the Commonwealth expert's opinion to the contrary?"

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. ***Commonwealth v. Gonzalez***, 109 A.3d 711,

---

[1] We note that Dr. Stein and Dr. Lorah served as opposing experts in one other recent case involving an SVP classification. ***See Commonwealth v. Fahnestock***, 262 A.3d 478, 2021 WL 3507673 (Pa. Super., Aug. 10, 2021) (unpublished memorandum).

723 (Pa. Super. 2015). A new trial is not warranted because of "a mere conflict in the testimony" and the grant of a new trial must be based upon a stronger foundation than a reassessment of the credibility of witnesses. *Id.* Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. *Id.*

This Court does not review challenges to the weight of the evidence *de novo* on appeal. *Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009). Our purview is "extremely limited." *Gonzalez*, 109 A.3d at 723. We only review the trial court's exercise of its discretionary judgment regarding the weight of the evidence presented during trial. *Id.* An appellate court will not grant relief on a weight of the evidence claim unless the determination is so contrary to the evidence as to shock one's sense of justice. *Id.* "We discern no basis on which to distinguish our standard of review on weight claims, whether challenging the weight of the evidence to support a guilty verdict or a trial court's SVP determination." *Commonwealth v. Ratushny*, 17 A.3d 1269, 1272 (Pa. Super. 2011).

The Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10—9799.42, defines an SVP as a person who has been convicted of a sexually violent offense[2] and who has a mental abnormality or personality disorder that makes the person likely to engage in predatory

---

[2] Appellant does not dispute that he has been convicted of a sexually violent offense, rape.

sexually violent offenses. 42 Pa.C.S.A. § 9799.12 (definition of SVP); *Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015). After conviction for a sexually violent offense, but before sentencing, the trial court must order the SOAB to perform an assessment to help determine whether the defendant should be classified as an SVP. 42 Pa.C.S.A. § 9799.24(a). As this Court has explained,

> [w]hen performing an SVP assessment, a mental health professional must consider the following 15 factors: whether the instant offense involved multiple victims; whether the defendant exceeded the means necessary to achieve the offense; the nature of the sexual contact with the victim[ ]; the defendant's relationship with the victim[ ]; the victim['s] age[ ]; whether the instant offense included a display of unusual cruelty by the defendant during the commission of the offense; the victim['s] mental capacity[ ]; the defendant's prior criminal record; whether the defendant completed any prior sentence[ ]; whether the defendant participated in available programs for sexual offenders; the defendant's age; the defendant's use of illegal drugs; whether the defendant suffers from a mental illness, mental disability, or mental abnormality; behavioral characteristics that contribute to the defendant's conduct; and any other factor reasonably related to the defendant's risk of reoffending. *See* 42 Pa.C.S.A. § 9799.24(b).

*Id.* at 189-90. There is no statutory requirement that all statutory factors or any particular number of them be present or absent in order to support an SVP designation. *Commonwealth v. Meals*, 912 A.2d 213, 220-23 (Pa. 2006). The factors are not a checklist with each one weighing in some necessary fashion for or against SVP designation. *Id.* at 222. Rather, the presence or absence of one or more factors might simply suggest the presence or absence of one or more particular types of mental abnormalities. *Id.* at

- 4 -

221. Thus, while the SOAB is to examine all of the statutory factors, the Commonwealth does not have to show that any certain factor is present or absent in a particular case. *Id.* Rather, the question for the trial court is whether the Commonwealth's evidence, including the SOAB's assessment, shows that the person convicted of a sexually violent offense has a mental abnormality or disorder making that person likely to engage in predatory sexually violent offenses. *Commonwealth v. Feucht*, 955 A.2d 377, 381 (Pa. Super. 2008).

An SVP hearing is not a trial. *Commonwealth v. Howe*, 842 A.2d 436, 446 (Pa. Super. 2004). During the SVP hearing, the Commonwealth has the burden of proving by clear and convincing evidence that the person meets the criteria to be designated as an SVP. *Commonwealth v. Stephens*, 74 A.3d 1034, 1039 (Pa. Super. 2013). This burden of proof has been described as an intermediate test, falling below the highest level of proof, beyond a reasonable doubt, but above the preponderance of the evidence standard. *Id.* Evidence will meet this level of proof if it is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue. *Id.*

The record in this case reflects that prior to the March 21, 2021 SVP hearing, both Dr. Stein and Dr. Lorah submitted expert reports. During the SVP hearing, the court permitted both doctors to testify as experts in the field of sexual offender assessments.

Dr. Stein testified as follows concerning his findings regarding the SVP assessment factors. He expert report was based upon a SOAB board investigator's report, court orders, reports from the Pennsylvania State Police and Childline, and prison records. N.T., 3/21/21, at 13. Appellant declined to be interviewed for the report. *Id.* at 14.

While Appellant's offense did not involve multiple victims, Appellant used physical force and the acts themselves were penetrative, including forcible rape and oral penetration. *Id.* The victim was Appellant's great-niece, a relevant fact because it established that Appellant was someone whom the victim would ordinarily have trusted and who violated that trust. *Id.* at 14-15. The victim was only 10 or 11 when the conduct began, a fact consistent with sexual deviance or paraphilic interests. *Id.* at 15. There was no unusual cruelty involved, the victim was of normal mental capacity for a child, and Appellant had no prior offenses or history of arrests. *Id.* Appellant was approximately 61 years old when the sexual conduct began, a relevant fact because of the substantial age difference between him and the victim. *Id.* There was no information available concerning use of illegal drugs by Appellant, and the only mental illness reported was a history of stroke with depression and anxiety, a factor Dr. Stein deemed not relevant. *Id.* at 15, 17. With regard to any behavioral characteristics that contributed to Appellant's conduct, there was a history of reported sexual misconduct with other children, but that only suggested other deviant sexual interests. Dr. Stein did not consider the other allegations and based his analysis solely on

the acts with this particular victim. *Id.* at 15-16. Dr. Stein acknowledged that defendants over age 60 are statistically less likely to re-offend. *Id.* at 16. In this case, however, Appellant was already over age 60 when the conduct began, making that factor more relevant and that statistic less accurate. *Id.* at 17.

Dr. Stein testified that because these offenses involved a 10-13 year-old child, starting at age 11 with penetrative sexual acts, all acts were "sexually deviant" and therefore "paraphilic." *Id.* at 18. This is a "lifetime" condition that is not curable. *Id.* at 19, 20. Dr. Stein added that there was a likelihood of recidivism, because

> [w]hen you have such a lengthy history, three years of penetrative sexual assault, there's sufficient evidence in my opinion that if [Appellant] was in the unsupervised presence of a young child over any length of time . . . there would likely be some kind of sexual misconduct. So, yes, I believe there's sufficient evidence for a likelihood of re-offending.

*Id.* at 20. Based on this analysis, Dr. Stein found that Appellant met the criteria of a mental abnormality or personality disorder as defined under SORNA, specifically, a paraphilic disorder of non-consent. *Id.* Moreover, Dr. Stein testified that "the first act of penetrative sexual assault of [the victim] established a sexually victimizing relationship that was then maintained and promoted with repeated acts over a lengthy period." *Id.* at 21. This was "a course of conduct that is consistent with predatory behavior as it's defined in the statute." *Id.*

Since the first penetrative acts established a sexually victimizing relationship that was then maintained, this course of conduct was consistent with predatory behavior. *Id.* at 21. Dr. Stein rendered his conclusions regarding Appellant to a reasonable degree of professional and medical certainty. *Id.* at 22.

Dr. Lorah, testifying on behalf of Appellant, contended that Dr. Stein's diagnosis of non-consensual paraphilia was not recognized in the DSM-V, the handbook recognized for mental health diagnosis accepted in the profession. *Id.* at 47. He also argued that the mere fact of non-consent was not sufficient to make Appellant an SVP, because all sex offenses involve some element of non-consent. *Id.* He added that the evidence did not prove non-consent, stating, "[T]here's indication in records that I found to suggest [Appellant's] victim asked him to stop, and he consented. He did. He stopped when asked. And I believe this is incongruent with a diagnosis of other paraphilic disorder, non-consent, and, therefore, does not serve as the impetus for his offending." *Id.* at 48. As for other incidents between Appellant and the victim, he distinguished between non-consent under the criminal law and non-consent in the paraphilic sense. Appellant was guilty of non-consent under the criminal law because victims in Pennsylvania under age 16 cannot give consent, and penile-vaginal assaults upon victims under age 13 constitutes rape. *Id.* at 49-50. In the paraphilic sense, however, non-consent only occurs when the defendant's primary motivation is non-consenting interactions with the victim.

- 8 -

*Id.* at 50-51. Dr. Lorah claimed that the evidence did not demonstrate non-consent in the paraphilic sense. The fact that other incidents took place beside the one in which Appellant stopped did not change his opinion. *Id.* at 59-60, 62-63.

Dr. Lorah also disagreed that Appellant had a lifetime condition, observing that it can go into full remission. *Id.* at 51. This is not the same thing as being cured. *Id.* at 64. Dr. Lorah saw remission as likely given Appellant's age and the nature of the offenses. *Id.*

Dr. Lorah believed reoffense was unlikely due to Appellant's age, despite the fact that he had offended after 60, stating, "It is unusual to have an individual commit sexual crimes in their 60s for the first time. Now, it would be even more unusual if he re-offended." *Id.* at 53. He also said, "I think the absence of [Appellant's] criminal history suggests that he will be responsive to supervision, intervention, and potential mandatory treatment, which I would recommend in this case." *Id.* at 54. He added that the DSM-V indicates Appellant's condition is not lifelong. *Id.* at 55.

Dr. Lorah concluded that, within a reasonable degree of scientific certainty, Appellant did not meet the criteria to be designated as an SVP. *Id.* He acknowledged he was not a member of the SOAB, *id.* at 60, but continued that he had performed "[m]any dozens" of assessments, but usually found the defendants to be SVP's and only authored reports in 10 to 15 cases. *Id.* at

60-61, 68-69. These were cases where he believed the defendant was not an SVP. *Id.*

The trial court found Dr. Stein credible and further found clear and convincing evidence that Appellant was an SVP. Memorandum, 7/14/21, at 9. The court rejected Appellant's challenge to the weight of the evidence, ruling that its determination that Appellant is an SVP did not shock its conscience. *Id.* at 10.

We hold that the court acted within its discretion by denying Appellant's weight claim. Appellant argues that Dr. Stein's diagnosis of non-consensual paraphilia does not subject him to SVP status because the DSM-V does not recognize this condition as a disorder. We see nothing in SORNA that requires a DSM-V diagnosis for an SVP determination, and the case law on this subject suggests that a DSM-V diagnosis is unnecessary. *See Commonwealth v. Meals*, 912 A.2d 213, 224-25 (Pa. 2006) (suggesting that offender may meet SVP criteria even if he does not necessarily meet all specific or technical criteria of the DSM–IV, the diagnostic manual that preceded the DSM-V); *Fahnestock*, 2021 WL 3507673, *4 (noting that Dr. Lorah, the same expert who testified on behalf of Appellant in this case, admitted that Section 9799.24 "does not require . . . a DSM-V diagnosis for an SVP determination, but rather requires a finding of a mental abnormality or personality disorder"). Accordingly, Appellant's reliance on the DSM-V is unconvincing.

Furthermore, the trial court reasoned as follows:

[Appellant]'s contention that Dr. Stein testified that "[Appellant] did not exceed the means necessary to commit the offense" is factually incorrect and belied by the record . . . Dr. Stein [found] that [Appellant] used physical force in the commission of the offense.

[Appellant] further claims that "[t]he records relied on by Dr. Stein indicate that the Victim told [Appellant] to stop, after which he did stop." However, the fact that [Appellant] may have stopped one time when the Victim told him to is of no moment. As noted by the Commonwealth . . . this case does not pertain to one occurrence, but instead to a course of conduct over a period of three years.

[Appellant] also contends that according to Dr. Lorah, the fact that [Appellant] is over the age of 60 also supports a finding that [Appellant] is unlikely to re-offend. However, Dr. Stein testified that "it is generally stated that recidivism rates are less when an individual is over age 60. However, this case is different because the [Appellant] committed the acts when he was already over age 60." . . . Therefore, this general statistic regarding age is not applicable to [Appellant]. Moreover, Dr. Stein also testified that:

> When you have such a lengthy history, three years of penetrative sexual assault, there's sufficient evidence in my opinion that if the [Appellant] was in the unsupervised presence of a young child over any length of time, that there would likely be some kind of sexual misconduct. So, yes, I believe there's sufficient evidence for a likelihood of re-offending.

Finally, while Dr. Stein testified that the paraphilic disorder—non-consent is a lifetime condition, he did agree that the condition is "potentially containable or manageable." However, while Dr. Lorah disagreed with Dr. Stein that the condition is a lifetime condition and claims that such paraphilia can and does go into remission, Dr. Lorah also admitted that when [Appellant] is released, he would not feel comfortable allowing [Appellant] to be around either a 10-year old daughter or another 10-year old family member of his own to watch alone with them.

Memorandum Denying Post-Sentence Motions, 7/14/21, at 7-9.[3]  The court further observed that it credited Dr. Stein's report and testimony and found it persuasive.  *Id.* at 9.

For these reasons, we conclude that the trial court properly exercised its discretion in denying Appellant's challenge to the weight of the evidence underlying his designation as an SVP.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/2022

_____

[3] The trial court provided this analysis in the course of denying Appellant's challenge to the sufficiency of the evidence underlying the SVP determination. The court subsequently determined that the same analysis defeated Appellant's challenge to the weight of the evidence.  *Id.* at 10.