J-A07040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RICHARD ALLEN FREHAFER :
:
Appellant : No. 1055 MDA 2024

Appeal from the Order Entered July 11, 2024
In the Court of Common Pleas of Dauphin County
Criminal Division at No:  CP-22-CR-0003284-2021

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:                    **FILED: JULY 1, 2025**

Appellant, Richard Allen Frehafer, challenges an order of the Court of
Common Pleas of Dauphin County (trial court), denying as untimely filed his
*pro se* "Motion to Dismiss the Unconstitutional Conviction, Sentence, and
Requirement to Register as a Sex Offender" (the Motion).  Finding that
Appellant's Motion was timely, but that his registration and reporting
requirements were lawfully imposed, we affirm the order on review.  On
remand, however, we direct the trial court to clarify for Appellant the specific
statutory provisions in which those requirements are enumerated.

The underlying offenses in this case took place on October 22, 2007.
Appellant was charged with rape, sexual assault, aggravated indecent assault,
indecent assault, unlawful restraint, and false imprisonment.  Following a jury
trial held on May 21, 2009, he was found guilty of the above crimes.  Appellant
was then sentenced on October 5, 2009, to an aggregate prison term of 7-15

years, followed by two years of probation. Appellant received notice on October 15, 2009, that he would be subject to lifetime registration requirements as a sex offender pursuant to the version of Megan's Law III then in effect at the time the subject offenses took place (42 Pa.C.S.A. § 9795.1(b)).[1]

On July 14, 2021, after serving the incarcerative portion of his sentence, Appellant's probation officer discovered that he had failed to timely notify the Pennsylvania State Police (the PSP) of a change in residence and employment in the prior month. Due to this untimely reporting, on July 14, 2021, Appellant was arrested and charged under section 18 Pa.C.S.A. § 4915.2(a)(1) of Subchapter I of the Sexual Offender Registration and Notification Act (SORNA II), with failure to report the changes in circumstances within three days to the PSP. The offense was graded in SORNA II as a second-degree felony.

"SORNA I" had become effective on December 20, 2012, replacing Megan's Law III on that date. On June 12, 2018, SORNA I was then replaced with SORNA II to remedy the former version's unconstitutional requirements

---

[1] The requirements applicable to Appellant, and the punishments for failing to comply with them, were outlined in the version of section 4915(c) of Megan's Law III that was in force from January 1, 2007, until December 19, 2011. Effective January 1, 2017, an amendment to section 4915 of Megan's Law III changed the grading of first-time violations of the offense. As of the date of Appellant's underlying sexual offenses, the crime of failing to timely register, for an individual subject to lifetime registration under Megan's Law III, was punishable as a second-degree felony. *See* 18 Pa.C.S.A. § 4915(c)(2), Act No. 2006–178, S.B. No. 944, *effective* Jan. 1, 2007. Prior to that amendment, the offense was graded as a second-degree misdemeanor. *See* *Commonwealth v. Derhammer*, 173 A.3d 723, 726 (Pa. 2017).

for offenders whose crimes preceded the effective date of SORNA I. Subchapter H of SORNA II governs crimes committed on or after December 20, 2012, whereas, Subchapter I of SORNA II applies to crimes committed after April 22, 1996, but before December 20, 2012.

Section 4915.2(c), in Subchapter I of SORNA II, now applies to an "individual [like Appellant,] who was required to register with the [PSP] under a former sexual offender registration law of this Commonwealth on or after April 22, 1996, but before December 20, 2012, and whose period of registration has not expired." 18 Pa.C.S.A. § 4915.2(f)(2). The offense of failing to report is graded under SORNA II as a second-degree felony, carrying a maximum penalty of 10 years in prison. **See** 18 Pa.C.S.A. § 4915.2(c)(2). Appellant entered a counseled guilty plea to that count on November 29, 2021.

On February 17, 2022, the trial court imposed a prison term of 1.5-3 years as to the offense of failing to register. The trial court advised Appellant at sentencing that he was designated as a "Tier III" sex offender under SORNA II, subjecting him to the statute's lifetime registration requirements. He was also advised that he would have 10 days from the date of the forthcoming sentencing to file any post-trial motions, and that he had 30 days from the date of sentencing, or 30 days from the date a motion to modify sentence was ruled upon, to file an appeal. Appellant did not file any post-sentence motions within 10 days of the date of his sentencing; nor did he file a timely appeal from a motion to modify his sentence, or from the judgment of sentence.

On April 3, 2024, Appellant filed his *pro se* Motion, arguing that his conviction for failing to register, and his registration requirements under SORNA II, must be vacated on three main grounds:

>(a) The SORNA II registration requirements imposed upon him retroactively violated the *ex post facto* clauses of the United States and Pennsylvania Constitution because failing to register under Megan's Law III was only punishable as a second-degree misdemeanor;

>(b) The conviction in 2021 for failing to register was "void" because after Megan's Law III expired in 2012, the trial court had no authority to impose any new registration requirements under SORNA II; and

>(c) The imposition of SORNA II's mandatory, irrebuttable presumption of likely recidivism violated his due process rights by impairing his right to reputation, as protected by Article I, Section 1 of the Pennsylvania Constitution.

Appellant's Motion, 4/3/2024, at 2-22 (arguments rephrased).[2]

The trial court declined to entertain the merits of Appellant's Motion, instead entering an order on July 11, 2024, finding it to be untimely filed whether construed as a post-sentence motion or a petition for collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.

---

[2] Appellant also raised an additional issue which he subsequently abandoned in the present appeal. He contended that the charging document was defective because it did not specify the manner in which he failed to report to the Pennsylvania State Police. ***See*** Appellant's Motion, 4/3/2024, at 17-19.

Appellant timely appealed from that order, and in his brief, he reiterates the above grounds asserted in his Motion. *See* Appellant's Brief, at iv.[3]

As to the timeliness of his underlying request for relief before the trial court, Appellant argues that his Motion should be construed as a PCRA petition that was filed within one year from the date his judgment of sentence became final. He argues in the alternative that the trial court had no "power and authority" to render judgment or impose registration requirements under SORNA II, making the judgment of sentence an illegal nullity which may be challenged "at any time." *See* Appellant's Brief, at 16-18. Since the timeliness of Appellant's motion is a jurisdictional issue which implicates the ability of a court to address the merits of his claims, we must determine at the outset whether the issues now before us have been adequately preserved.

The timeliness of a PCRA petition must be resolved as a matter of law, subject to a *de novo* standard of review. *See Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010). If a PCRA petition is untimely, neither an appellate court nor the PCRA court has jurisdiction to consider the petition's merits. *See id*. "Without jurisdiction, we simply do not have the legal authority to address the substantive claims" raised in an untimely petition. *Id*.

---

[3] In 2012, Appellant filed his first PCRA petition with the aid of counsel, and the petition was denied as untimely filed. *See Commonwealth v. Frehafer*, No. 1650 MDA 2013 (Pa. Super. filed March 12, 20140 (unpublished memorandum).

Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence becomes final. **See Commonwealth v. Gamboa-Taylor**, 753 A.2d 780, 783 (Pa. 2000); 42 Pa.C.S.A. § 9545(b)(1). The PCRA enumerates three exceptions to that time-bar which petitioner must plead and prove by a preponderance of the evidence. **See** 42 Pa.C.S.A. § 9545(b)(1). Under these statutory exceptions, the petitioner must show that: "(1) there has been interference by government officials in the presentation of the claim; or (2) there exists after-discovered facts or evidence; or (3) a new constitutional right has been recognized." **Commonwealth v. Fowler**, 930 A.2d 586, 591 (Pa. Super. 2007) (citations omitted).

Here, Appellant was notified of the applicable registration and reporting obligations imposed by Megan's Law III on October 15, 2009; he was later sentenced on February 17, 2022, for violating the reporting requirements of SORNA II. As to the latter conviction, Appellant did not file a post-sentence motion or a direct appeal, and under the PCRA, a petitioner must seek post-conviction relief within one year from the date that the judgment of sentence became final.

For purposes of the PCRA, Appellant's most recent judgment of sentence (for failing to report) became final on March 21, 2022, which was the date on which the 30-day period for filing a direct appeal had expired. **See** 42 Pa.C.S.A. § 9545(b)(3). Appellant therefore had to file a PCRA petition no

later than one year after that date, March 21, 2023, in order for it to be timely under 42 Pa.C.S.A. § 9545(b).[4]

As Appellant's present claims were first raised on April 3, 2024, they are patently untimely under the PCRA. The trial court therefore had no authority (under the PCRA) to consider the merits of Appellant's claims unless an enumerated exception to the statute's time-bar applies. **See** **_Commonwealth v. Beasley_**, 741 A.2d 1258, 1261 (Pa. 1999). Since Appellant did not attempt to establish, much less prove, the applicability of such an exception, the trial court could not consider the substantive merit of Appellant's claims insofar as they were asserted under the PCRA.

However, Appellant's lack of recourse to PCRA relief does not end our inquiry. In his brief, Appellant argues alternatively that the trial court could consider a belated challenge to his registration and reporting requirements because the underlying judgment of sentence entered in 2009 became a legal nullity in 2012, when Megan's Law III was replaced by SORNA I. **See** Appellant's Brief, at 17-18.

---

[4] Appellant argues that he had an additional 90 days to seek certiorari review before the United States Supreme Court. However, that time cannot be tacked on to the 30-day period for seeking review in a state court if no such review was sought. **See** U.S. Sup.Ct.R. 13(1) (providing that "[a] petition for a writ of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review."). Regardless, Appellant's Motion would be untimely under the PCRA even with the benefit of another 90 days.

In *Lacombe*, our Supreme Court expressly "decline[d] to find the PCRA, or any other procedural mechanism . . . the exclusive method for challenging sexual offender registration statutes."[5] *Commonwealth v. Lacombe*, 234 A.3d 602, 618 (Pa. 2020). Accordingly, SORNA registrants seeking relief from those statutes are not limited by the timing provisions of the PCRA. *See id.* at 617-18 (concluding that the trial court had jurisdiction to consider petition challenging offender's reporting obligations where a PCRA petition would have been untimely).

Following *Lacombe*, this Court has likewise observed that because "[n]on-punitive, administrative requirements are merely collateral consequences of a criminal conviction[,] . . . a challenge to the requirements mandated by . . . SORNA II pertains to a collateral consequence of one's criminal sentence and does not fall within the purview of the PCRA" and is "not subject to its time-bar." *Commonwealth v. Smith*, 240 A.3d 654, 658 (Pa. Super. 2020). An individual may therefore challenge SORNA registration and reporting requirements, and a resulting conviction for failing to report, without complying with the PCRA's deadlines. *See id.*; *see also Commonwealth v. Mucci*, 327 A.3d 1223, 1227-28 (Pa. Super. 2024) (holding that motion to vacate lifetime registration and reporting requirements was timely filed years after defendant's judgment of sentence became final).

---

[5] SORNA II is divided into two subchapters. "Subchapter H governs those whose offenses occurred after December 20, 2012. Subchapter I applies to those who offenses were completed prior to that date." *Commonwealth v. Santana*, 266 A.3d 528, 530 n.7 (Pa. 2021).

In the present case, the trial court appears to have overlooked these authorities by strictly construing Appellant's Motion as either an untimely PCRA petition, or an untimely post-sentence motion that would be procedurally barred. The trial court erred because it in fact had jurisdiction to consider the merits of Appellant's claims. *See Commonwealth v. Elliott*, 249 A.3d 1190, 1193 (Pa. Super. 2021) (holding that, under *Lacombe*, the lower court erred in construing a challenge to registration requirements under SORNA II as an untimely PCRA petition). Having determined that there is no jurisdictional impediment to the merits consideration of Appellant's Motion, we now address his claims below.

Appellant argues first that he cannot be subject to SORNA II because his underlying sexual offenses were committed prior to SORNA I's effective date in 2012, making SORNA an unconstitutional *ex post facto* law and his conviction for failing to report a void judgment.

The constitutionality of a statute presents an appellate court with a pure question of law. *See Commonwealth v. Howe*, 842 A.2d 436, 441 (Pa. Super. 2004). "A statute is presumed to be constitutional and will not be declared unconstitutional unless it clearly, palpably, and plainly violates the constitution." *Id*. The party asserting such a challenge "has a heavy burden of persuasion." *Id*.

Both the Pennsylvania and federal constitutions contain clauses which prohibit the enactment and application of *ex post facto* laws. *See* U.S. Const. art. I, § 10; *see also* PA Const. art. I, § 17. Our Supreme Court has

interpreted these two *ex post facto* clauses to be effectively identical. **See Commonwealth v. Young**, 637 A.2d 1313, 1317 (Pa. 1993).

The purpose of the clauses is "to preserve for persons the right to fair warning that their conduct will give rise to criminal penalties." **Commonwealth v. Grady**, 486 A.2d 962, 964 (Pa. Super. 1984) (quoting **Commonwealth v. Hoetzel**, 426 A.2d 669, 672 (Pa. Super. 1981)). "A state law violates the *ex post facto* clause if it was adopted after the complaining party committed the criminal acts and 'inflicts a greater punishment than the law annexed to the crime, when committed.'" **Commonwealth v. Fleming**, 801 A.2d 1234, 1237 (Pa. Super. 2002) (quoting **Coady v. Vaughn**, 770 A.2d 287, 289 n.2 (Pa. 2001)). "[T]his Court has held that the critical inquiry for determining whether the application of SORNA to a convicted sex offender violates *ex post facto* prohibitions is the date of the offense." **Commonwealth v. Lippincott**, 208 A.3d 143, 149 (Pa. Super. 2019) (*en banc*) (citing **Commonwealth v. Horning**, 193 A.3d 411, 417 (Pa. Super. 2018)).

The applicability of SORNA to offenders whose crimes preceded the enactment of that statute may be unconstitutional where the penalty for a crime in effect at the time of an offense has been retroactively increased. **See e.g., Lippincott**, 208 A.3d at 150 ("application of SORNA to sex offenders for offenses committed before its effective date violates the *ex post facto* clauses of the United States and Pennsylvania Constitution."); **see also Commonwealth v. Fuller**, No. 1313 WDA 2019, at *3 (Pa. Super. filed

- 10 -

February 24, 2020) (unpublished memorandum) ("Fuller's convictions under 18 Pa.C.S. § 4915.1(a)(2) stemmed from his failure to comply with SORNA's increased reporting requirements, which included increasing his periodic in-person verification to four times a year based on his being classified as a Tier III offender under SORNA.  *See* 42 Pa.C.S.A. § 9799.15(e)(3).").

Crucially though, in *Lacombe*, our Supreme Court held that the retroactive application of SORNA II registration and reporting requirements did *not* violate the constitutional prohibition on the *ex post facto* clauses of the United States and Pennsylvania Constitutions.  *See Lacombe*, 234 A.3d at 626-27.  As the *Lacombe* Court explained, the General Assembly lawfully enacted Subchapter I of SORNA II, which applies SORNA's registration requirements to offenders whose underlying crimes were committed between April 22, 1996, and December 20, 2012.  *See id*. at 615.

Here, Appellant's convictions on counts of rape and related crimes make him subject to the lifetime registration and reporting requirements of Subchapter I of SORNA II.  *See* Pa.C.S.A. § 9799.55(b).  Appellant's sex crimes were committed in 2007.  At the time of his sentencing in 2009, Appellant was required to report his sex offender status under the provisions of Megan's Law III, which imposed those requirements on Appellant for life.

These requirements had not expired at the time that SORNA II was enacted, or when Appellant failed to timely register in 2021.  In a similar scenario, this Court held that

[B]ecause Appellant was previously subject to registration under Megan's Law III, and his registration period (his lifetime) had not expired, he was and is subject to SORNA I and its replacement, SORNA II. Likewise, although our Supreme Court found that Megan's Law III was unconstitutional, that ruling did not operate to remove Appellant from the class of 'existing registrants' subject to registration under SORNA.

***Commonwealth v. Downward***, No. 634 MDA 2021 (Pa. Super. filed March 14, 2022) (unpublished memorandum) (Internal citations and quotations omitted); ***see also Commonwealth v. Mucci***, 327 A.3d 1223, 1230-31 (Pa. Super. 2024) (same).

To summarize, then, Appellant was originally required to follow the registration and reporting requirements of Megan's Law III; he then became subject to the analogous requirements of Subchapter I in SORNA II due to his 2009 convictions, and the non-completion of Megan's Law lifetime registration requirements at the time SORNA went into effect. Appellant later violated the lawful requirements of SORNA II in 2021 by not reporting his change of address and employment to the PSP. He was charged under subsection 4915.2(a)(1) of Subchapter I with failing to register, and he pleaded guilty to that offense. Appellant's plea and conviction are valid because the trial court had authority to impose the registration and reporting requirements of SORNA II which Appellant violated.

In a related, but distinct claim, Appellant contends that SORNA II's reporting requirements are unconstitutional, as applied to him, because a reporting violation results in a harsher criminal penalty than provided for in Megan's Law III. He has argued that the operative version of Megan's Law in

effect at the time of his underlying sex crimes made failing to report a new address to PSP only a second-degree misdemeanor (18 Pa.C.S.A. § 4915(c)(1)), a more lenient grading than that in SORNA II, which made the crime a second-degree felony. However, even assuming that a change in the grading of the offense would implicate *ex post facto* considerations, the issue is academic here because Appellant's recitation of the relevant legislative history is factually incorrect.

As of 2006, section 4915(c)(1) of Megan's Law III indeed graded the crime as a second-degree misdemeanor where the offender had no prior record of failing to report. But in an amendment effective on January 1, 2007, section 4915(c)(1) of Megan's Law III was deleted; that same offense was added to subsection (c)(2); and the offense was graded as a second-degree felony – the same grading now in effect in Subchapter I of SORNA II. **See** 42 Pa.C.S.A. § 4915.2(c)(2).[6] Accordingly, Appellant was later convicted of a reporting offense under Subsection I of SORNA II which was graded at the same level as the corresponding reporting offense in the relevant version of Megan's Law III. The application of SORNA II therefore did not increase the penalty on Appellant for failing to report, and his conviction does not violate state and federal *ex post facto* clauses.

_____

[6] Section 4915 of Megan's Law III was amended on November 29, 2006, upon the passage of Senate Bill Number 944, in Act Number 2006-178. The amendment was made effective from January 1, 2007, to December 19, 2011. Appellant's underlying sex offenses took place within that timeframe, on October 22, 2007.

The final, somewhat undeveloped, issue raised by Appellant is that Subchapter I of SORNA II violates his constitutional right to reputation because its lifetime reporting requirements impose an irrebuttable presumption of recidivism. In cases where a defendant was designated as a "sexually violent predator" (SVP), this Court has held that Subchapter I of SORNA II "does not violate the right to reputation under Pennsylvania's constitution." **Commonwealth v. Morgan**, 258 A.3d 1147, 1157 (Pa. Super. 2021). As Appellant was not designated as an SVP, which carries more onerous lifetime registration, notification, and counseling requirements than those imposed by Subchapter I of SORNA II on non-SVP registrants like Appellant, it logically follows that his reputation rights likewise could not have been violated. Thus, no relief is due on this ground.

Finally, we note the need for a clarification of the record. Appellant was lawfully subject to the requirements of Subchapter I of SORNA II, which applies to offenders whose crimes took place within the dates on which Appellant's underlying offenses fell. **See** 42 Pa.C.S.A. § 9799.55(b)(2)(i)(A). Appellant was convicted under 18 Pa.C.S.A. § 4915.2 of Subchapter I of SORNA II. He remains subject to the lifetime registration and reporting requirements of that subchapter. **See** 42 Pa.C.S.A. § 9799.55(b).

However, on February 17, 2022, in the Notification of Requirement of Registration of Sexual Offenders, Appellant was advised in the first paragraph that he was a "Tier III" offender who was "convicted of a sexual offense, as defined in 42 Pa.C.S.A. Chapter 97, **Subchapter H**." (Emphasis added). The

- 14 -

case docket also contains entries indicating that Appellant is classified as a "Tier III" offender.

"'Tier III' is a feature of Subchapter H, but not Subchapter I and . . . Appellant is subject only to Subchapter I." *Commonwealth v. Hagerty*, No. 2035 EDA 2020, at *11 (Pa. Super. filed August 24, 2020) (unpublished memorandum). A remand therefore is in order to clarify Appellant's registration. On remand, the docket entry's reference to "Tier III" should be promptly clarified to indicate whether and to what extent Appellant is subject to any registration and reporting requirements different from those enumerated in Subchapter I of SORNA II. The trial court may make this assessment with the aid of a hearing, briefing by the parties, or any other appropriate action. The trial court shall then notify Appellant of its findings.

Order affirmed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>7/01/2025</u>